**M. H. RITZWOLLER CO. v. NATIONAL LABOR RELATIONS BOARD.**

No. 7080.

Circuit Court of Appeals, Seventh Circuit.
May 8, 1940.

On Petition for Rehearing July 16, 1940.

Otto A. Jaburek and Frank C. Jaburek, both of Chicago, Ill., for petitioner.

Charles Fahy, Malcolm F. Halliday, Robert B. Watts, Associate General Counsel, Laurence A. Knapp, Asst. General Counsel, and Mortimer B. Wolf, Bertram Edises, Richard C. Barrett, and Marcel Mallet-Prevost, for National Labor Relations Board, all of Washington, D. C., for respondent.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This case is here on petition to review and set aside an order issued September 1, 1939, by the National Labor Relations Board under Section 10(c) of the National Labor Relations Act. 29 U.S.C. Sec. 151 et seq., 29 U.S.C.A. § 151 et seq. In answer to the petition, the Board requested enforcement of its order.

The complaint issued March 7, 1938, upon amended charges filed by the Coopers' International Union of North America, Local No. 28 (hereinafter called the "Union"), an affiliate of the American Federation of Labor. The jurisdictional allegations, or the applicability of the Act, are not here in question. The violations charged are that, on or about May 14th, June 7th, June 17th, June 18th, July 7th, July 15th and July 20th, 1937, and at all times thereafter, petitioner refused to bargain collectively with the Union as the exclusive bargaining representative of its employees, that such refusal to bargain caused a strike and, that because of their activities in behalf of the Union, petitioner refused to reinstate certain striking employees upon application and, that as a result, petitioner committed unfair labor practices within the meaning of Section 8 (1), (3) and (5), and Section 2 (6) and (7) of the Act. Petitioner, by answer, denied the commission of the unfair labor practices.

A Trial Examiner, before whom a hearing was had, on May 17, 1938, filed an Intermediate Report, in which it was found that petitioner, on or about May 14th, June 17th, June 18th, July 7th, and in November and December, 1937, refused to bargain collectively with the Union and, by such refusal and its continued refusal, had engaged in unfair labor practices. Exceptions were filed to such report and oral argument had before the Board. Thereafter, the Board rendered its decision, setting forth its findings of fact, conclusions of law and order.

The Board found that petitioner, in violation of Section 8 (5) of the Act, on June 18th, July 23rd, July 26th, September 24th and in November and December, 1937, and thereafter, [1] refused to bargain collectively with the Union, although a majority of the employees in an appropriate unit had, on June 17th, 1937, designated the Union as their collective bargaining representative. The Board also found that petitioner's refusals to bargain on June

---

[1] We have set forth the dates alleged in the complaint, those found by the Examiner and the Board, on which petitioner refused to bargain, for the reason that petitioner makes the point of a discrepancy between such dates. It will be

434

18th and thereafter, prolonged a strike which began on June 17th, and petitioner thereafter, in violation of Section 8 (3) discriminatorily refused to reinstate the strikers upon application. It also found that the petitioner, by its officers and agents, informed various employees that petitioner would never recognize the Union, that adherence to the Union cause would be fruitless and that petitioner granted an unsolicited general wage increase for the purpose of discouraging Union membership, thereby interfering with, restraining and coercing its employees in the exercise of the rights guaranteed by Section 7 of the Act, and thereby violating Section 8 (1).

The cease and desist portion of the Board's order is in the usual form in such cases. Affirmatively, the Board ordered petitioner (a) upon request, to bargain collectively with the Union as the exclusive representative of its employees in the appropriate unit, and if an agreement should be reached, to embody the terms of such agreement in a written contract with the Union if requested to do so; (b) to offer to 19 named employees full reinstatement to their former positions, dismissing, if necessary, all persons hired since June 18, 1937, and placing upon a preferential list those employees for whom employment is not immediately available; (c) to make whole the 19 employees ordered reinstated and one employee not ordered reinstated,[2] for any loss of pay suffered by reason of petitioner's discriminatory refusal to reinstate such employees; and (d) upon application, to offer to all strikers full reinstatement to their former positions, or placement upon a preferential list if employment is not available, and to make them whole for any loss of pay suffered by reason of petitioner's refusal to reinstate them upon request.[3]

The chief argument made on this appeal is that the findings of the Board and its order predicated thereon are not supported by substantial evidence. It is also argued that the order deprives the petitioner of property without due process of law.

The limited jurisdiction of this court, in considering petitioner's contention that the findings of the Board are unsupported by substantial evidence, is so well recognized as to require little discussion. The language of the Act (10(e), "the findings of the Board as to the facts, if supported by evidence, shall be conclusive," construed by the courts to mean "substantial evidence,"[4] precludes us from weighing the evidence, and permits analysis only for the purpose of ascertaining if a finding has substantial support. The Board's order, especially its affirmative requirements, obviously must rest largely, if not entirely, upon the finding that the petitioner refused to bargain collectively with the Union. As hereafter pointed out, this is especially true as to June 18th, the day following the calling of the strike.

In support of its argument concerning failure of due process, petitioner lays great stress upon the disparity between the dates alleged in the complaint, those found by the Trial Examiner, and those found by the Board concerning its refusal to bargain. As already observed, June 18th is the only date in common. It is said that this situation in itself casts a shadow over the entire proceeding and raises a serious question as to the substantiality of the Board's findings. Without disparaging the pertinency of this argument, we think it carries little weight, and certainly it can not be given the importance attributed to it by petitioner. We see no reason why the Board, in its review of the record, should be held to the precise dates alleged in the complaint or found by the Examiner. It can not be said that such discrepancy constitutes a variance between the charge and the findings. Proof of an act or offense within the limitation period is generally sufficient to sustain a charge in a civil or criminal action, and we think it is sufficient here. If the complaint had

observed that the only date in common is that of June 18th.

[2] The reinstatement of the employee was not ordered, since he admitted rejection of an offer of reinstatement. The pay awarded him was limited to the period between his application for reinstatement and the rejection of petitioner's offer to reinstate.

[3] The Board dismissed the complaint as to certain named employees whom petitioner was charged with discriminatorily

discharging, which action is not material here.

[4] Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660; Montgomery Ward & Company v. National Labor Relations Board, 7 Cir., 107 F.2d 555, 558.

charged a violation of one section of the Act and the finding concerned another, a different question would be presented. Here, the violation charged and found, both by the Examiner and the Board, is the same. Also, it may be pointed out that the complaint charged not only specific dates, but "and at all times thereafter," and the Board found, in addition to the specific dates named "and at all times thereafter." So it may be said ·that petitioner was charged and found guilty of a continuous refusal to bargain with the Union. It is also argued that the complaint was amended subsequent to the conclusion of the hearing to comport with the proof. This practice was approved in National Labor Board v. Mackay Company, 304 U.S. 333, 340, '58 S.Ct. 904, 82 L.Ed. 1381. Also, petitioner contends it was not given sufficient time to prepare its answer to the complaint as amended at the commencement of the hearing. True, petitioner was allowed one day only, but it does not appear that a longer time was requested, nor that it was harmed thereby. We therefore conclude that petitioner's contentions with reference to due process must be denied.

 The Union was organized in April, 1937, with a membership of 136 out of 150 non-supervisory employees. At or about the time of its organization, petitioner's general manager, largely in control of its plant, called into his office a group of five or six employees who had joined the organization, and vigorously protested against the organization of the Union. He stated: "Before I will let anybody tell me how to run my business, I will close the plant down three weeks and let you poor devils starve." Also, the employees were told that the Union would not be recognized. On the same day, the employees were offered an hourly increase in wages. Upon learning that the raise was unsatisfactory, the manager offered to increase it. The offered raise was unsatisfactory, and the manager was advised that the men were not so much concerned with the increased wages as the recognition of their Union. This was the first

occasion that the manager had called employees into the office for the purpose of discussing wages or working conditions. It is petitioner's theory that the purpose of the proffered wage increase was to quiet an unrest among the employees and tu forestall the possibility of a sit-down strike. The Board found, however, that this was a method employed by petitioner to interfere with, restrain and coerce its employees in their right of self-organization, thereby violating Section 8 (1) of the Act. We think the evidence and circumstances support the finding in this respect.

In the meantime, petitioner's manager was consulted on various occasions, by representatives of the Union, concerning individual grievances, with little, if any, success. At a meeting of the Union it was decided to present petitioner with a demand as to hours of employment, working conditions and rates of pay. On June 10, 1937, a Union Committee went to petitioner's place of business for the purpose of delivering the Union proposal. [5] They met petitioner's manager in front of the plant and requested him to discuss the terms of the proposal. He advised them that he was leaving town for a few days, but that he would take the written proposal with him, and suggested that they call upon him after his return. [6] The manager returned on June 12th and was at his desk until June 15th inclusive. The Union officials endeavored to contact him, both personally and by telephone, but without success. The Union, at a meeting on June 16th, was advised by its officials of their inability to obtain an interview with petitioner and were instructed to again attempt a conference, and if unsuccessful, to call a strike. They called at petitioner's office on June 17th and were advised by petitioner's treasurer that the manager was out of town. After some discussion as to the proposal which they had submitted on June 10th and their inability to obtain a conference, they advised the treasurer that unless a conference was granted within twenty-four hours for the purpose of discussing the proposed agreement, a strike

[5] The proposed agreement provided for a closed shop, 8-hour day with time and a half for overtime, the union label on petitioner's products, nondiscrimination against employees because of union activity, that union representatives have access to the shop, for specified wages for various classes of employees, for seniority rights of employees in case of lay-offs, and for certain other matters.

[6] Petitioner discusses the discrepancy in the dates used by certain of the Board's witnesses as affecting their credibility. We do not regard the argument as material, the credibility of the witnesses and weight to be attached to their testimony was for the Board.

would be called. The treasurer agreed to telephone the manager, who was then in the East, and to give the Union. Committee an answer, which it appears was never given. Evidently the manager received the message, as he returned at once and a conference was held in his office, attended by petitioner's officials and representatives of the Union, on the morning of June 18th.

In the meantime, and on the afternoon of June 17th, some of the employees and members of the Union discovered that petitioner's products were being loaded in freight cars with unusual speed. This was contrary to the usual practice. The employees took this to mean that the management was emptying its warehouses preparatory to a possible strike. As a counter move, a strike was called by the Union, operations ceasing at 2 o'clock P. M., and the plant was immediately picketed. Under these circumstances, the conference of June 18th was had. As might be expected, the witnesses do not agree as to what was said and done at this meeting. Petitioner argues there is no substantial evidence of an offer, much less a refusal, to bargain. If we consider merely what was said on this occasion, there might be some merit to petitioner's argument. It must not be overlooked, however, that petitioner's manager had, on June 10th, received, and during the intervening time, had in his possession, the Union proposal. While the Act, no doubt, places upon the employees the burden of instituting the bargaining negotiations, and places no burden in this respect upon the employer, yet we do not think it is incumbent upon the employees to continually renew the proposal. Here petitioner had the proposal and was bound to make the next move. Petitioner's officials were informed, in effect, that the strike would be called off if petitioner would recognize the Union as the bargaining agent. The manager's reply was that he "had nothing to discuss with us at that time." It is argued by petitioner that the employees left the conference and that they were the ones who refused to bargain. We do not think so. In evaluating the occurrences of this date, it is material to consider the position of the parties prior thereto. That petitioner had disclosed its hostility and opposition to the Union is plainly disclosed. It is equally apparent that petitioner had no intention of bargaining with reference to the matters contained in the employees' proposal of June 10th. Actions and con-

duct on some occasions speak louder than words, and we think that is true of the meeting of June 18th. The finding of the Board, that petitioner refused to bargain on that date, is amply supported.

It would serve no useful purpose to relate the testimony and circumstances concerning other dates on which it was found that petitioner refused to bargain. We have read it and conclude that it supports the findings of the Board. So far as we are able to discover, petitioner at no time gave any heed to, or offered to bargain concerning the matters contained in the proposal submitted June 10th. We think there is no merit in petitioner's argument that the proposal of that date was merely an unqualified demand for a closed shop and, that petitioner, therefore, was under no obligation to bargain. True, the proposal included a closed shop, but this was only one of the numerous matters submitted, and petitioner cannot escape its obligation to bargain on such a flimsy excuse.

If there remained any doubt that petitioner refused to bargain, or that it had ignored the union in its proposal to bargain, it is dispelled by the notice signed by petitioner and posted on July 23d at the employees' entrance to its plant, as follows: "This plant will resume operations on Monday, July 26th, under the same terms and conditions as the plant has run in the past." That is the very antithesis of any intention to bargain or to concede any of the demands made by the Union.

We think the course pursued by petitioner, in connection with the circumstances, some of which we have related, naturally leads to the conclusion that by its dilatory conduct, if not intentional refusal to consider the Union proposal, aggravated and perhaps actually caused the strike of June 17th and, that its refusal to bargain on June 18th and at subsequent times, was responsible for the prolongation of the strike. Being thus responsible, it cannot escape the consequences which the Act prescribes.

■ The plant was reopened on July 26th. Petitioner appealed directly to its employees by telegram, letter, telephone and messenger, to return to work. Many employees did so, but for those who remained on strike, other persons were employed in their place. Of the employees ordered reinstated by the Board, seven applied individually for reinstatement at various

dates between August and November, 1937, and thirteen applied through the Union on September 24, 1937. It was found that they had been discriminatorily refused reinstatement and petitioner was required to make them whole for time subsequent to the date application was made for reinstatement. Petitioner argues that there was no bona fide application made by the Union for reinstatement of its members for the reason that no duly designated committee presented the demand and that no unqualified demand was made. It appears that on September 24th an official of the Union, accompanied by a group of strikers, called on petitioner's manager and informed him that all of the men on strike would like to return to their jobs. They were informed, in effect, that men in the plant could not be discharged to make room for them. It would seem to us that this constituted a demand for reinstatement and a refusal on the part of petitioner. The Union official who acted as spokesman on that occasion was the same person who had assisted in the organization of the Union, and who was present at every conference had between officials of the Union and petitioner. Thus he was known to petitioner as a spokesman for the Union, and we think it is now too late for petitioner to dispute his authority to speak and act for those on strike in the matter of their application for reinstatement.

Petitioner's argument that it was under no obligation to reinstate its striking employees is necessarily predicated upon the theory that it had conformed to the requirement of the Act. There is no basis for the argument, however, in view of the Board's finding and our conclusion that it was guilty of an unfair labor practice on June 18th and subsequent dates. True, in National Labor Board v. Mackay Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381, relied upon by petitioner, the court held that the employer had a right to hire other persons to take the place of its striking employees and was not bound to displace such men in order to provide positions for the striking men, when they desired to return, provided, of course, the employer's refusal was not discriminatory. That the holding of the court was predicated upon a situation where the employer was not guilty of an unfair labor practice is evidenced by what the court said, 304 U.S. on page 345, 58 S.Ct. on page 910, 82 L.Ed. 1381: " * * * Although section 13 of the act, 29 U.S.C.A. § 163, provides, 'Noth-

ing in this Act [chapter] shall be construed so as to interfere with or impede or diminish in any way the right to strike,' it does not follow that an employer, guilty of no act denounced by the statute, has lost the right to protect and continue his business by supplying places left vacant by strikers. * * * "

In the instant case, notwithstanding the fact that the men were on strike subsequent to June 17, 1937, they remained employees by reason of Section 2 (3) of the Act. National Labor Board v. Mackay Company, supra, 304 U.S. at page 345, 58 S.Ct. at page 910, 82 L.Ed. 1381. The fact that they were on a strike would not relieve petitioner of the obligation of bargaining with them on June 18th.

As was said in National Labor Board v. Columbian Co., 306 U.S. 292, at page 296, 59 S.Ct. 501, at page 503, 83 L.Ed. 660: " * * * Restoration of the strikers to their employment, by order of the Board, under § 10 (c) of the Act, 29 U.S.C.A. § 160 (c), could as a practical matter be effected only if respondent had failed in its statutory duty to bargain collectively at some time * * * before respondent had resumed normal operation of its factory. * * * "

Having concluded that the finding of the Board with reference to petitioner's unfair labor practices must be sustained, it necessarily follows that its affirmative requirement that the striking employees be reinstated and that they be made whole from the date of their respective applications for reinstatement, is in conformity with the Act.

Petitioner also makes the contention that the record fails to disclose that the Union continued to be the bargaining agent of the employees during the period of the strike and especially at the time reinstatement was requested. It is shown clearly, in fact not disputed by petitioner, that on June 18, 1937, and for several months prior thereto, the Union was the proper bargaining agent, representing substantially all of the employees. Just how many retained their membership in the Union during the period of the strike, the record does not disclose. It is shown that its membership was reduced. We cannot say, however, that at any time it ceased to be the proper bargaining agent. In National Labor Relations Board v. Highland Park Manufacturing Company, 4 Cir., 110 F.2d 632, 640, decided March 11, 1940, the court,

in discussing a similar contention, said: "* * * In such case it is reasonable to presume that the authority of the bargaining agent continues until the contrary be shown [citing cases]."

The court also concluded that it was reasonable to assume that any decline in Union membership was due in a large measure to the refusal of the employer to bargain with the Union. The instant situation calls for a similar conclusion. It is also pertinent to point out that petitioner at no time refused to bargain because the Union was not the proper or authorized agent.

 Among the affirmative requirements of the Board's order is that petitioner, upon request, bargain collectively with the Union as the exclusive representative of its employees and "in the event that an agreement is reached, execute a written contract with the Union embodying the terms of such agreement, if requested to do so." This requirement is in conformity with the Act except the quoted language which involves the controversial question as to whether an employer is required by the Act to sign an agreement. The Board refers us to its brief on this point to Inland Steel Company v. National Labor Relations Board, 7 Cir., 109 F.2d 9. In that case, this court decided the point contrary to the Board's contention, and we are not convinced that our decision was wrong—in fact, we are still of the opinion that no such requirement is contained in the Act.

The petition to review and set aside the Board's order is denied, and the Board's request for enforcement is allowed, modified so as not to require a signed agreement.

### On Petition for Rehearing.

On petition for rehearing in the above entitled matter, petitioner raises the question as to the validity of that portion of the Board's order which requires petitioner to pay over "to the appropriate fiscal agency of the Federal, State, county, municipal, or other government or governments which supplied the funds for said work-relief projects." Nothing was said concerning this requirement either in petitioner's original brief or in the Board's brief. It is mentioned, but not argued, in petitioner's reply brief. The requirement is shown in a footnote of the Board's order as found in the Transcript of Record. The question, therefore, was not considered or decided.

We have recently, in Stewart Die Casting Corporation v. National Labor Relations Board, 7 Cir., 114 F.2d 849, decided July 3, 1940, held that the Board is without authority to make such requirement. There is no occasion to repeat or further discuss what we said in that case.

In addition to the modification suggested in our original opinion, the Board's order is further modified in conformity with this additional holding, and as so modified its request for enforcement is allowed.