## NATIONAL LABOR RELATIONS BOARD v. BOSS MFG. CO.
### No. 6433.

Circuit Court of Appeals, Seventh Circuit.

March 17, 1941.

SPARKS, Circuit Judge, dissenting.

Robert B. Watts, General Counsel, N.L.R.B., of Washington, D. C., for petitioner.

David R. Clarke, of Chicago, Ill., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is a petition by the National Labor Relations Board that the Boss Manufacturing Company and its officers and agents be adjudged in contempt of this court for their failure to comply with the decree of this court, entered on December 19, 1939, wherein enforcement of an order of the Board made with respect to the Boss Manufacturing Company was directed pursuant to an opinion rendered November 7, 1939, 7 Cir., 107 F.2d 574.

The decree ordered the Boss Manufacturing Company (hereafter referred to as "respondent") to cease and desist (1) from interfering with, restraining or coercing its employees in the exercise of their rights guaranteed in § 7 of the National Labor Relations Act, 29 U.S.C.A. § 157, and (2) from refusing to bargain collectively with International Glove Workers' Union of America, Local 85, as the exclusive representative of all its production employees, excepting supervisory and clerical employees. The decree also ordered respondent, (4c), upon request, to bargain collectively with Local 85 as the exclusive representative of all its production employees, in respect to rates of pay, wages, hours and other conditions of employment.

In its petition the Board alleged that respondent has failed to comply with, and has disobeyed and resisted compliance with, the paragraphs of the decree above set forth, and prayed that respondent and Thomas R. Stokes, Thomas H. Blair and C. W. White, its president, vice-president and superintendent, respectively, be adjudged in contempt.

In support of its petition the Board presented affidavits from officials of the union and from members of its collective bargaining committee to the effect that there has been no compliance with the above paragraphs of the decree.

In opposition to the Board's petition the respondents filed a joint and several answer denying that they have disobeyed and failed to comply with the decree, and averred that they did bargain in good faith in respect to all matters under consideration and have reached an agreement in all matters in which respondent could reach an agreement with the union.

An analysis of all the affidavits, after excluding all immaterial matters, leads us to the conclusion that the facts are that on January 20, 1940, a collective bargaining committee, representing Local 85, and Blair and White, representing respondent, held a conference at which Youngfelt, a member of the committee, inquired what respondent intended to do about complying with the decree, to which Blair replied: "We will meet with the committee of Local 85, but according to law it was [we are] required to meet with any employee or group of employees for the purpose of hearing any complaints they might have to make." Youngfelt thereupon stated that the union could not accept this limited recognition;

that exclusive bargaining meant that respondent would deal with the committee of Local 85 and no other; that collective bargaining meant a program of meeting and getting the views of the employees which would lead to friendly relations and that all matters relating to working conditions and changes in rates of pay would have to be taken up with the committee; and that Blair replied: "We could never do anything like that * * * that would interfere with management."

The parties held a second conference on February 3, at which the union presented a proposed agreement. Blair voiced opposition to several of its provisions, but upon request of the committee agreed to give the proposal further consideration. They met again on February 17 to consider the agreement consisting of 12 paragraphs. It provided (1) that Local 85 represents all of the employees working in respondent's factory; (2) that the divisions of work would be left to the discretion of the employer and the shop committee; (3) that new kinds of work shall be submitted to the shop committee; (4) that overtime work shall be paid for at the rate of time and one-half, but no work to be performed on Sundays or holidays; (5) that Saturday shall be a holiday throughout the year; (6) that no discrimination be made against any member of the union; (7) that no solicitation nor union business shall be transacted upon the premises of the employer during working hours; (8) that no strikes or lockouts should take place during the life of the agreement and that all questions not settled by the agreement shall be referred to arbitration; (9) that the employer shall recognize and deal with shop stewards for discussion and adjustment of grievances; (10) that shop stewards shall be allowed to collect dues; (11) that present wages shall remain in force during the life of the agreement; and (12) that the agreement shall be in force for a definite period subject to cancellation by either party giving a 30-day written notice.

It will not be necessary to discuss all of the paragraphs. Blair objected to (4) and (6) on the ground that the payment of overtime and the question of discrimination were covered by the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.—consequently, there was no need to bargain about these points. He objected to (5) because, although it was respondent's

policy not to work on Saturdays, there were times when it was necessary to do a limited amount of work. He objected to (8) on the ground that there was no law prohibiting men going out on a strike nor compelling respondent to operate its plant, and that he could not agree to arbitration on the ground that if the employees and the company could not work out their problems and have confidence in each other, operations could not be successful for either side. With respect to (9) he stated that shop stewards would interfere with the duties of the foreman and were unnecessary, and as to (10) that he could not permit the collection of dues. Regarding (11) Blair would not embody wages in any agreement nor discuss the length of time that wages would remain in effect on the theory that wages were open for discussion at any time by either side. Finally, respecting (12) Blair in substance stated that respondent had accepted a number of the provisions of the proposed agreement, requested changes in others and refused several of the provisions because they were contrary to respondent's policies; that the provisions accepted would be carried out to the letter but respondent would not sign any agreement. Thereupon Blair was informed that respondent had made no counter-proposals and that the union would not consider that respondent had engaged in collective bargaining unless a written agreement was signed.

One further conference was held on March 9 and the proposed agreement was again the subject of discussion. Respondent insisted that matters covered by law could not be the subject of bargaining. As to matters covering wages, rates of pay and working conditions, respondent stated it would not agree to them as these would interfere with management. It declined to make counterproposals because such a procedure would be against the company's principles.

On the record before us the question is whether the respondents have in fact refused to bargain collectively with Local 85.

■ Collective bargaining, as contemplated by the Act, is a procedure looking toward the making of a collective agreement between the employer and the accredited representative of his employees concerning wages, hours and other conditions of employment. Collective bargaining requires that the parties involved deal with each other with an open and fair mind and sincerely endeavor to overcome obstacles or difficulties existing between the employer and the employees to the end that employment relations may be stabilized and obstruction to the free flow of commerce prevented. National Labor Relations Board v. Sands Mfg. Co., 306 U.S. 332, 342, 59 S.Ct. 508, 83 L.Ed. 682; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126; H. J. Heinz Co. v. National Labor Relations Board, 61 S.Ct. 320, 85 L. Ed. ——, decided by the Supreme Court January 6, 1941; National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F. 2d 681, 688; Globe Cotton Mills v. National Labor Relations Board, 5 Cir., 103 F.2d 91, 94; and National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 787. Mere pretended bargaining will not suffice, National Labor Relations Board v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 478, neither must the mind be hermetically sealed against the thought of entering into an agreement, Somerset Shoe case, supra, 111 F.2d 688. To do less than is required by the decisions above cited is a refusal to bargain collectively and violates the spirit and tenor of the Act. National Labor Relations Board v. Griswold Mfg. Co., 3 Cir., 106 F.2d 713, 720.

■ Respondent insisted that it would not discuss the scheduling of new rates except after they were put into effect; that it refused to discuss and to make any agreements as to overtime, Sunday or holiday work, because they were covered by law; that it would not consider contractually binding itself against lockouts or agreeing to arbitrate any differences that might arise; and, finally and boldly, that it would not sign any written agreement even though satisfactory to both parties.

This attitute of the respondent upon these most essential principles convince us that respondent participated in the discussions with Local 85 with a fixed intention not to agree with any proposal, irrespective of whether the proposed terms were otherwise acceptable. Such an attitude shows a total want of good faith and makes genuine collective bargaining impossible.

An order will be entered adjudicating the Boss Manufacturing Company, Thomas R. Stokes, Thomas H. Blair and C. W. White in contempt of the decree of this court entered on December 19, 1939. We

await the suggestions of the parties as to the penalty to be imposed.

SPARKS, Circuit Judge, dissenting.