## NATIONAL LABOR RELATIONS BOARD v. H. G. HILL STORES, Inc.
### No. 10859.

Circuit Court of Appeals, Fifth Circuit.
Feb. 10, 1944.

Robert B. Watts, Gen. Counsel, and Howard Lichtenstein, Asst. Gen. Counsel, National Labor Relations Board, both of Washington, D. C., for petitioner.

Edward Haspel, of New Orleans, La., for respondent.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The National Labor Relations Board petitions for enforcement of an order entered against respondent pursuant to Section 10 (c) of the National Labor Relations Act.[1]

Respondent is a Louisiana corporation. It owns and operates 90 retail grocery stores, of which 86 are located in Louisiana

1 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

and 4 in the State of Mississippi, the sales from which are 100% local. Respondent also owns a warehouse in the city of New Orleans, and this proceeding concerns its warehouse employees. The Board found that respondent had refused, in violation of Section 8 (5) of the National Labor Relations Act, to bargain collectively with the Union (in this case Warehouse & Distribution Workers Union, Local 207, International Longshoremen's & Warehousemen's Union, affiliated with the C. I. O.); had, in violation of Section 8 (1), interfered with the employees in the exercise of their rights under the Act by refusing to enter into a contract with the Union, and by granting its warehouse employees a general wage increase without notice to the Union and under circumstances calculated to discourage employees from continuing their union membership.

In the proceedings before the Board, respondent challenged, without success, the Board's jurisdiction. In its answer to the Board's petition in this Court, respondent again challenges the application of the Act to its business, and, in the alternative, urges that the Board's findings with respect to unfair labor practices are not supported by any substantial evidence. The issues are therefore:

1. Is the Act applicable to respondent?

2. If so, are the findings of fact by the Board supported by substantial evidence?

### 1.

■ According to admitted facts, respondent purchased merchandise costing $1,230,068.75, and representing 19.08% of its total purchases, outside of the State of Louisiana during a 10-month period, January 1, 1942, to October 3, 1942. This merchandise was delivered to its New Orleans warehouse. During this period, respondent shipped goods valued at $204,169.34 and representing 3.17% of its purchases, from its New Orleans warehouse to its 4 retail stores in the State of Mississippi. In the light of these facts, we must hold, as did the Board, that the Act is applicable to respondent.[2]

### 2.

With respect to the alleged unfair labor practices, the accepted facts, in substance, are: The Union won a Board election among warehouse employees on April 2, 1942. In May two meetings of Union representatives were had with the committee representing respondent, headed by Mr. Penick, its president, and a proposed agreement, submitted by the Union containing provisions for wages, hours, seniority, and a union shop, etc., was discussed. Respondent agreed to many of the items contained therein, but flatly rejected the demands for wage increase and for a closed shop agreement, Mr. Penick stating that the price ceiling fixed by the O. P. A. made impossible any wage increase, and that he was opposed to restricting employees to union men. After agreeing to submit a revised agreement to meet respondent's objections, the Union representatives called a meeting of warehouse employees to discuss the changes, and at this meeting the warehousemen were assured that a contract would probably be signed in the near future. Mr. Penick, upon being advised of this and upon being told that word was being passed out by the Union that only members of the Union would be employed following the execution of a contract, entered the warehouse and addressing five or six employees, told them, according to the testimony of two of the negroes present, that he would not sign a contract, and according to his testimony, that he would not sign a contract with a closed shop provision. The Board accepted the testimony of the two negroes.

In June the parties again met; Penick again refused to consider wage increases or to submit a counter-proposal on subjects still in controversy. A final conference was had in July and Penick was then told that the Union would file charges unless respondent agreed to wage increases or a closed shop. Penick desired to consult his attorney, and the meeting was adjourned. Later he advised a Union representative that further negotiations were useless as he would not agree to wage increases or

[2] N. L. R. B. v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; N. L. R. B. v. Gulf Public Service Co., 5 Cir., 116 F.2d 852, 854, 855; N. L. R. B. v. Suburban Lumber Co., 3 Cir., 121 F.2d 829, 830–833, certiorari denied 314 U.S. 693, 62 S.Ct. 364, 86 L.Ed. 555; N. L. R. B. v. Poultrymen's Service Corp., 3 Cir.,

138 F.2d 204; N. L. R. B. v. White Swan Co., 4 Cir., 118 F.2d 1002, certiorari denied 314 U.S. 648, 62 S.Ct. 93, 86 L.Ed. 520; Virginia Electric & Power Co. v. N. L. R. B., 4 Cir., 115 F.2d 414, 415, 416, affirmed as to jurisdiction, 314 U.S. 469, 476, 62 S.Ct. 344, 86 L.Ed. 348.

to a closed shop. He was then requested by letter to submit questions dividing the parties to arbitration. This he refused to do.

In the first days of August, Penick, learning that the O. P. A. would relax its ceilings, without notice to the Union announced a general wage increase. Sometime later a Union representative contacted Penick and requested that negotiations be resumed. Penick replied that charges had been filed by the Union and so long as the charges were pending he would not negotiate.

█ A discussion of respondent's course of action in dealing with its employees' exercising the rights of self-organization and collective bargaining under the Act, as revealed in the foregoing facts, would serve no useful purpose. Similar courses of action on the part of employers have been considered by the courts many times, and each time held to constitute unfair labor practices.[3]

In the Barrett Co. case, the Seventh Circuit Court held:

"The Act obligates the employer to bargain in good faith with the chosen representative of a majority of his employees with respect to all matters which affect his employees as a class, including wages, hours of employment, and working conditions, National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, to the end that contracts satisfactory to both employer and employees may be reached, Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126, and these requirements can only be satisfied by an honest and sincere compliance. National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 358, 60 S.Ct. 569, 84 L.Ed. 799. Entering into negotiations for an agreement with a reservation not to reduce it to writing or sign it, is not bargaining in good faith. H. J. Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 526, 61 S.Ct. 320, 85 L.Ed. 309; cf. National Labor Relations Board v. Boss Mfg. Co., 7 Cir., 118 F.2d 187; Singer Mfg. Co. v. National Labor Relations Board, 7 Cir., 119 F.2d 131; Rapid Roller Co. v. National Labor Relations Board, 7 Cir., 126 F.2d 452; Aluminum Ore Co. v. National Labor Relations Board, 7 Cir., 131 F.2d 485. Announcing an increase in wages while negotiations are in progress, without prior agreement thereon by a union, is a violation of § 8 (5) of the Act, Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 127 F.2d 180, * * *."[4]

█ In our opinion, the Board's findings of fact and conclusions are supported by the evidence.

An examination of the record reveals that in its complaint, the Board alleged that at all times since April 7, 1942, the Union was the representative for the purpose of collective bargaining of a majority of the employees in the appropriate unit, and by virtue thereof was the exclusive representative of all the employees in said unit for the purpose of collective bargaining when the complaint was filed. In its answer, respondent denied this allegation. When charges came on to be heard before the Trial Examiner on November 30, 1942, the attorney representing respondent was asked by the Trial Examiner if he would stipulate that the Union represented a majority of the warehousemen "between the time of the election and the present day". The attorney declined, calling attention to the fact that the allegation in the complaint to that effect was denied in the answer. The question whether the Union did or did not represent a majority of the employees at the time of the hearing was then referred to the merits to be determined from the evidence.

The Trial Examiner specifically found that the Union on and after April 7, 1942, was at all times the exclusive representative of all of the employees in the unit for the purpose of collective bargaining. The respondent, before the Board, excepted. The Board adopted the findings, conclusions, and recommendations of the Trial Examiner with one qualifying exception not important here, and entered its order under date of April 28, 1943. On May 19, 1943, respondent moved to reopen to take additional evidence to ascertain if

[3] N. L. R. B. v. Express Pub. Co., 312 U.S. 426, 433, 435, 61 S.Ct. 693, 85 L.Ed. 930; N. L. R. B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 479; Inland Lime & Stone Co. v. N. L. R. B., 7 Cir., 119 F.2d 20, 22; Hartsell Mills Co. v. N. L. R. B., 4 Cir., 111 F.2d 291, 292.

[4] N. L. R. B. v. Barrett Co., 7 Cir., 135 F.2d 959, 961.

the Union presently represented a majority of the employees. This motion was denied by the Board on the ground that it presented no facts to substantiate respondent's contention, other than its assertion that a turnover in personnel had occurred.

As respondent raised the issue in its answer in the proceeding before the Board that the Union did not represent a majority of its warehouse employees, and as that issue was resolved against it, we are of the opinion that respondent did not make a showing in its motion that would justify reopening the proceedings to take additional evidence to ascertain if the Union at this time represents a majority of the warehousemen, especially in view of the findings against it of engaging in unfair labor practices. If the Union does not represent a majority of the employees at this time, a rival union or group of employees will be free to petition the Board under Section 9 of the Act for investigation of the representation question. This, however, has no effect upon respondent's present duty to obey the order of the Board.[5]

The petition of the Board is granted and a decree enforcing its order will be entered.

---

[5] International Ass'n of Machinists v. N. L. R. B., 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. 50.