## NATIONAL LABOR RELATIONS BOARD v. HARRIS et al.

No. 14027.

United States Court of Appeals Fifth Circuit.

Jan. 5, 1953.

Thomas J. McDermott, Attys., A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, National Labor Relations Board, Washington, D. C., for petitioner.

James F. Hulse, El Paso, Tex., for respondent.

Before HUTCHESON, Chief Judge, and BORAH, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This is a petition for enforcement of an order[1] of the Board issued on July 31, 1951, against respondent, Morris Harris et al., d/b/a Union Manufacturing Company. The findings of fact, conclusions of law, and order of the Board are reported in 95 N.L.R.B. 792.

Respondent operates a plant at El Paso, Texas where it employs approximately 250 workers and is engaged in the manufacture and sale of work clothing and related products. On February 8, 1947, following an election, the Amalgamated Clothing Workers of America, C.I.O., was certified by the Board as the bargaining representative for respondent's production and maintenance employees at the El Paso plant. Shortly afterwards respondent and the Union entered into bargaining negotiations which continued, with some interruptions, over a three year period without any contract being agreed upon. Several times during the course of these negotiations, the Union filed charges with the Board that respondent was refusing to bargain in good faith, in violation of Section 8(a)(5) of the Act. On December 5, 1949, in an attempt to adjust the Union's charges, respondent executed a formal settlement agreement with the approval of the Board's Regional Director, whereby it promised that it would "bargain collectively upon request" with the Union.

In early January, 1950, representatives of the respondent and the Union met again after a stalemate lasting about 6 months, and made some progress in their negotiations over certain "house rules", which respondent had proposed for incorporation in a contract. After two meetings on January 6 and 7, some of the rules proposed by respondent were agreed to by the Union, and it indicated that it would consent to the remainder with slight changes. During these meetings, Union representative Lambert attempted to ascertain whether respondent planned to raise the minimum wage rates of the employees to 75 cents per hour, as would be required by amendments to the Fair Labor Standards Act[2] Respondent's general manager, H. D. Kroll, replied that this was no concern of the Union. Lambert then inquired whether respondent, assuming it was covered by the amendments, would increase the piece work rates so as to maintain an incentive spread. Kroll stated that he would not discuss new piece rates and that he did not know whether respondent was even going to pay the 75 cent minimum wage because "his lawyers hadn't advised him whether he was covered by the law".[3]

The Union informed respondent at the January 7 meeting that it desired to discuss further with respondent the effect of the new minimum wage under the amendments, before respondent took any action thereon. Kroll thereupon consented to meet with the Union again sometime between February 1 and February 10. On February 6, in response to several efforts of Union representative Lambert to fix a definite date, Kroll postponed the meeting date until February 18 or 20. Prior to that date, however, the amendments to the Fair Labor Standards Act had already become effective, and respondent had raised wages in compliance therewith without consulting the Union. As a result, the Union informed respondent on February 10 that it considered that respondent had violated its ob-

---

1. (1) Cease and desist from refusing to bargain collectively with Amalgamated Clothing Workers of America, C. I. O., unilaterally instituting changes in wages etc., interfering with Union's efforts etc.
   (2) Upon request, resume negotiations with Union, post copies of notice etc.

2. The amendments were scheduled to become effective January 25, 1950.

3. In this connection, petitioner argues that respondent was subject to the original Fair Labor Standards Act, and that there was nothing in either the definition or exemption sections of the amendments which could reasonably have led respondent to believe that the provisions would not cover its operations. Subsequently, Lambert advised Kroll by letter dated January 10, that the Wage and Hour Division in Dallas had advised him that respondent was not exempt from the amendments.

ligation to bargain in good faith, and that the Union intended filing an unfair labor practice charge with the Board. However, the Union still offered to meet with respondent on February 18 or 20, and promised to withdraw any charges should an agreement be reached at that time. After General Manager Kroll was notified that the Union had filed charges, he wrote the Union on February 16 that he was "postponing any meeting until the situation is clarified. * * * We will write you further after hearing from the NLRB." This was the last communication which the Union ever received from the respondent.

There is evidence that after terminating negotiations, respondent, without notifying or consulting the Union, granted a general wage increase to certain of its employees; increased its piece work rates so as to maintain a production incentive over and above the wage increase required by the Fair Labor Standards Act amendments; posted and put into effect "house rules" relating to working conditions of the employees which were substantially different from those it had previously discussed with the Union; and instructed its employees to deal directly with respondent on their grievances.

■ At the outset, respondent contends that this entire proceeding was invalid for lack of jurisdiction because the C.I.O., the parent federation of the Union, had not complied with Section 9(h) of the Act when the charge was filed. It appears that the charges were filed on March 23, 1949, and amended three times before the C.I.O. complied with the non-communist affidavit provision on December 22, 1949.[4] Subsequently the Union, on February 14, 1950, filed another charge alleging a refusal to bargain on February 7, 1947, and "at all times since." The complaint (issued October 17, 1950) and the trial examiner's intermediate report were based upon all charges, but the Board limited its finding of violations to the period on and after February 16, 1950, when respondent broke off negotiations with the Union. There was compliance at the time the last amended

charge was filed, when the complaint issued, when the Board's order was entered, and at the time of the unfair labor practices found by the Board. It, therefore, appears that the C.I.O. was in compliance with Section 9(h) at times "relevant to this proceeding." N. L. R. B. v. Highland Park Manufacturing Co., 341 U.S. 322, 325, 71 S. Ct. 758, 760, 95 L.Ed. 969; see N. L. R. B. v. American Thread Co., 5 Cir., 198 F.2d 137; N. L. R. B. v. Nina Dye Works Co., Inc., 3 Cir., 198 F.2d 362.

■ Respondent makes no point that the violations found beginning February 16, 1950 all occurred subsequent to the filing of the last amended charge on February 14, 1950, but we make note of that fact for the purpose of considering whether the Board had jurisdiction to consider violations subsequent to the filing of the charge but prior to the issuance of the complaint. Clearly, we think, there was such jurisdiction. The charge was of a continuing violation, a refusal to bargain on February 7, 1950 and "at all times since." The charge having set in motion the Board's inquiry, the complaint properly included matters occurring subsequent to the filing of the charge, and the issue respondent was called on to meet was the truth of the accusations of the complaint. N. L. R. B. v. Indiana & Michigan Electric Co., 318 U.S. 9, 18, 63 S.Ct. 394, 87 L.Ed. 579; N. L. R. B. v. Westex Boot & Shoe Co., 5 Cir., 190 F.2d 12, 13; M. H. Ritzwoller Co. v. N. L. R. B., 7 Cir., 114 F.2d 432.

■ The Board concluded upon substantial evidence that "on and after February 16, 1950, (respondent) broke off negotiations because the Union filed unfair labor practice charges with the Board." This was not a sufficient reason to justify respondent's break with the Union, for the filing or pendency of unfair labor practice charges does not relieve an employer of his duty to bargain collectively. See N. L. R. B. v. H. G. Hill Stores, Inc., 5 Cir., 140 F.2d 924, 926; Hartsell Mills Co. v. N. L. R. B., 4 Cir., 111 F.2d 291, 292; N. L. R. B. v. Ellis-Klatscher & Co., 9 Cir., 142 F.2d 536. The evidence as to the progress made

4. These charges were the subject of the Board's settlement agreement of December 5, 1949.

toward reaching an agreement in the early January meetings shows that there would have been some possibility of an agreement being reached, but for respondent's having by-passed the Union in granting wage increases and making other changes in working conditions on its own. Under such circumstances, the Board properly found that respondent's break with the Union on and after February 16, 1950, constituted a refusal to bargain under Section 8(a)(5) of the Act. See N. L. R. B. v. Crompton-Highland Mills, 337 U.S. 217, 224–225, 69 S.Ct. 960, 93 L.Ed. 1320; May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 384, 385, 66 S.Ct. 203, 90 L.Ed. 145; N. L. R. B. v. Andrew Jergens Co., 9 Cir., 175 F.2d 130, 136; N. L. R. B. v. Grieder Machine Tool & Dye Co., 6 Cir., 142 F.2d 163, 165.

Respondent's contention that its granting of the wage increases was justified to prevent loss of its experienced employees to competitors, as well as required by law under the Fair Labor Standards Act amendments, is without merit as a defense to the violations. The Act permits no immunity because the employer may think that the exigencies of the moment require infraction of the statute, Wilson & Co., Inc. v. N. L. R. B., 8 Cir., 123 F.2d 411, 417–418, and although the wage increase may have been required by law, the evidence as to respondent's refusal to present or even discuss it with the Union after the unfair labor practice charges were filed on February 14, 1950, is sufficient to justify the Board's finding of respondent's refusal to bargain in good faith. The good faith bargaining requirement of the Act includes matters covered by law where, as here, they relate to terms and conditions of employment. See N. L. R. B. v. Corsicana Cotton Mills, 5 Cir., 178 F.2d 344, 347; N. L. R. B. v. Boss Mfg. Co., 7 Cir., 118 F.2d 187, 189; Singer Mfg. Co. v. N. L. R. B., 7 Cir., 119 F.2d 131, 138.

The Board's findings are supported by substantial evidence on the record considered as a whole, and its order is hereby

Enforced.