### NATIONAL LABOR RELATIONS BOARD v. EPSTEIN et al.

### No. 10888.

United States Court of Appeals
Third Circuit.

Argued Jan. 23, 1953.

Decided April 15, 1953.

Rehearing Denied May 7, 1953.

Harvey B. Diamond, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Bernard Dunau, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

James M. Quigley, Harrisburg, Pa. (Samuel A. Schreckengaust, Jr., McNees, Wallace & Nurick, Harrisburg, Pa., on the brief), for respondents.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

The Board seeks enforcement of its order of January 29, 1952, requiring respondents, Harry Epstein, Irving Epstein, and Lena Epstein, co-partners, d/b/a Top Mode Manufacturing Company, to bargain with Local 108 of the International Ladies' Garment Workers' Union and granting other related relief.[1]

After an unpleasant experience with a Philadelphia local of the same International Union, which resulted in the respondents' discontinuance of their operations there, the firm opened a plant for the manufacturing of women's dresses at Dauphin, Pa., about August 1, 1949. Within three weeks the union began organizing the employees. On August 29, the union agent, by letter, advised respondents that the union had achieved majority status and requested contract negotiations with the union. On September 6, the firm's attorney replied that he had advised Harry Epstein, manager of the company, to insist upon proper certification as the collective bargaining agent before agreeing to negotiate. Thereupon, the following day, Johnson, the union organizer, filed a petition for certification with the Board. The union sought an early date for a consent election, while Epstein sought delay; however, October 17 was finally fixed. Shortly after the date had been agreed to, the union became

---

1. The Board's decision and order are reported at 97 N.L.R.B. (No. 197) (1952).

aware of certain conduct of Epstein which caused it to withdraw the petition for certification and to file on September 28 an unfair labor practice charge, alleging violation of Section 8(a) (5) by refusal to bargain and of Section 8(a) (1) by engaging in interrogation, threats, and other similar improper conduct.[2] On April 2, 1951, an amended charge was filed which repeated the allegations of the original charge and extended them to that date.

The respondent's chief complaint is that the Board predicated its finding of a refusal to bargain upon the attorney's letter[3] of September 6. Counsel in the brief and at the oral argument made the point that by so doing there is an implication of either bad faith or a lack of professional competence on his part. A study of the record reveals that the Board considered the letter as but one of the props which Epstein used in setting the stage for his play of dissipating the union's majority. It was, however, merely the first one, and at that time undoubtedly properly supplied and unrecognizable. It acquired its character by his subsequent conduct which made it abundantly clear that at the time it was written for him Epstein entertained no reasonable doubt as to the union's majority. It was this latter finding on which the Board bottomed its conclusion that there was a refusal to bargain and that Epstein caused the letter to be written for delay.

Of course, an employer may rightly withhold recognition from a union possessed of majority status and request an election to confirm its accreditation if there is a bona fide doubt of a majority. Where the refusal is merely to afford time to take action to dissipate the majority, it constitutes a violation of the duty to bargain set forth in Section 8(a) (5) of the Act. National Labor Relations Board v. W. T. Grant Co., 9 Cir., 1952, 199 F.2d 711, certiorari denied, 1953, 344 U.S. 928, 73 S.Ct. 497; Joy Silk Mills, Inc. v. National Labor Relations Board, 1950, 87 U.S.App.D.C. 360, 185 F.2d 732, certiorari denied, 1951, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350. The record here is replete with substantial evidence to support the finding of a lack of a bona fide doubt. The time gained by the insistence upon an election was immediately put to use by Epstein to undermine the union. Employees were threatened with economic reprisals, interrogated concerning the union activity, solicited to report union affairs and sentiments, importuned to induce other employees to abandon the union, and promised and granted economic benefits. After the unfair labor practice charge was filed, the conduct was continued: promising an employee that he would be rewarded if he remained loyal, interrogating employees concerning union activity, participating in the preparation of an anti-union petition, and informing the employees that if they had not done something to stop the union the plant would have been closed. In addition, the respondents unilaterally changed their method of compensation from hourly rates to piecework rates, likewise installed a noncontributory sick-benefit plan, a program of paid vacations and a general wage increase. Such conduct clearly violated Section 8(a) (1) of the Act. May Department Stores Co. v. National Labor Relations Board, 1945, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145.

---

2. "§ 8 (a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 of this title; '

\* \* \* \* \*

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a) of this title." 49 Stat. 452 (1935), as amended, 65 Stat. 601 (1951), 29 U.S.C.A. § 158.

3. The body of the letter is as follows: "This is to advise you that Mr. Harry Epstein has contacted us in regard to the question of recognition raised in your letter of August 29. We have reviewed the matter with him and have advised him that for the protection of all concerned he should insist that Local 108 of the I.L.G.U. be properly certified as the collective bargaining agent before he agrees to negotiate."

█ The respondents counter with the assertion that since most of this conduct occurred after the filing of the first charge and more than six months before the filing of the second charge, i.e., between September 28, 1949, and October 2, 1950, the Board is precluded under the provisions of Section 10(b) of the Act as amended[4] from making any findings based on that conduct. Clearly, the Board here acted properly.[5]

The amended charge alleged acts and conduct similar to those complained of in the original charge, and it averred violations of the same sections of the Act. In fact, the amended charge was practically a verbatim restatement of the original charge; it simply extended "to the date hereof" the allegations of the original charge. Although the charge is a condition precedent to the Board's power to issue a complaint, National Labor Relations Board v. Kobritz, 1 Cir., 1951, 193 F.2d 8; National Labor Relations Board v. Westex Boot & Shoe Co., 5 Cir., 1951, 190 F.2d 12, it is not a pleading. National Labor Relations Board v. Indiana & Michigan Electric Co., 1943, 318 U.S. 9, 18, 63 S.Ct. 394, 87 L.Ed. 579; National Labor Relations Board v. Kingston Cake Co., 3 Cir., 1951, 191 F.2d 563; Cusano v. National Labor Relations Board, 3 Cir., 1951, 190 F.2d 898; Kansas Milling Co. v. National Labor Relations Board, 10 Cir., 1950, 185 F.2d 413. It merely sets the Board's investigatory powers in motion. National Labor Relations Board v. Gaynor News Co., 2 Cir., 1952, 197 F.2d 719; National Labor Relations Board v. Kingston Cake Co., supra; Cusano v. National Labor Relations Board, supra. The proceeding does not even become a case until the Board serves its complaint. National Labor Relations Board v. Westex Boot & Shoe Co.,

supra; National Labor Relations Board v. Tex-O-Kan Flour Mills Co., 5 Cir., 1941, 122 F.2d 433, 437. "This section [10(b)] has been uniformly interpreted to authorize inclusion within the complaint of amended charges—filed after the six months' limitation period—which 'relate back' or 'define more precisely' the charges enumerated within the original and timely charge." National Labor Relations Board v. Gaynor News Co., supra 197 F.2d at page 721, and cases cited therein.[6] Even without the amended charge, we think that the complaint in this case could have properly included the matters occurring subsequent to the filing of the charge, for the original charge was of a continuing violation and the subsequent acts were of the same class and were continuations of it and in pursuance of the same objects. National Labor Relations Board v. Harris, 5 Cir., 1953, 200 F.2d 656. Prior to the amendment of the Act, the Supreme Court held in National Licorice Co. v. National Labor Relations Board, 1940, 309 U.S. 350, 369, 60 S.Ct. 569, 579, 84 L.Ed. 799, that the Board was empowered to redress "unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board." The amendment to the Act does not change that holding. National Labor Relations Board v. Somerset Classics, Inc., 2 Cir., 193 F.2d 613, certiorari denied sub nom. Modern Mfg. Co. v. National Labor Relations Board, 1952, 344 U.S. 816, 73 S. Ct. 10; National Labor Relations Board v. Harris, supra.

The other contentions of the respondents we find to be without merit.

A decree for the enforcement of the Board's order may be submitted.

---

4. Section 10(b) of the Act provides in part: " * * * no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board * * *." 48 Stat. 926 (1934), as amended, 62 Stat. 991 (1948), 29 U.S.C.A. § 160(b).

5. We are not unaware of the holding to the contrary by the Seventh Circuit in

Indiana Metal Products Corp. v. National Labor Relations Board, 6 C.C.H. Lab. Law Rep. Par. 67,446 (decided March 10, 1953). With due deference, we are forced to disagree.

6. The "relation back" doctrine is quite common even in the more formal area of pleadings. Fed. Rules Civ.Proc. rule 15 (c), 28 U.S.C.A.