255 F.2d 68
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
McCLOSKEY AND COMPANY, Inc., and Local 470, International
Brotherhood of Teamsters, Chauffeurs, Warehousemen
and Helpers of America, AFL-CIO, Respondents.
 No. 12212.
 United States Court of Appeals Third Circuit.
 Argued Oct. 24, 1957.
Decided Nov. 27, 1957.
 
 Margaret M. Farmer, Jerome D. Fenton, Stephen Leonard, Marcel Mallet-Prevost, Samuel M. Singer, Washington, D.C., for petitioner.
 J. Dress Pannell, Harrisburg, Pa., Lawrence D. Biele, Philadelphia, Pa., for respondents.
 Before GOODRICH, STALEY and HASTIE, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 Pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C.A. 160(e), the Labor Board has filed this petition seeking enforcement of its order of September 19, 1956, requiring respondents to cease and desist from certain unfair labor practices. More specifically, the order recites violation of the Act by the company and union in the maintenance of agreements unlawfully requiring union membership or approval as a condition of employment;[1] further, the Board found that the Act was violated by the union in causing the company to lay off one Getta Owens, and by the company for laying off Owens at the request of the union because he was not a union member.[2]
 
 
 2
 The basic issue here, as in all Labor Board enforcement petitions, is whether there is substantial evidence, considering the record as a whole, to support the Board's findings. That record discloses the following evidence.
 
 
 3
 At all times relevant to this petition, the company and the union operated under two collective bargaining agreements. Both contracts contained similar union security provisions; it will serve our purposes here to set forth one of them verbatim:
 
 
 4
 'III. Except as herein otherwise provided, all classes of employees of Operator to whom this agreement applies shall be members of Union, and Operators shall continue in their employment only members of Union with paid up dues books.
 
 
 5
 'IV. In response to any Operator's requests for men, Union shall at all times supply competent and experienced help * * *. In requesting men from Union, the Operator shall have the right to request, and Union shall supply, any particular member of Union in good standing, who is unemployed at the time, provided that such unemployed members is willing to accept the work. In the event that the men supplied by the Union, are not, for good and sufficient reasons, satisfactory to an Operator, he may at his option employ another member of Union in good standing to be supplied by the Union.
 
 
 6
 'V. In engaging employees, or dismissing employees because of lack of business, Operator shall conform to the ordinary rules of seniority. In promoting employees to jobs coming within this agreement, employers shall have the right to select qualified persons, but as between equally qualified persons preference shall be given according to seniority.'
 
 
 7
 Getta Owens was a member in good standing of Local 182 of the Teamsters of Utica, New York. He applied for a job as a truck driver with the respondent company in October 1954; the job was within the jurisdiction of Local 470, the respondent union. A supervisory employee told Owens that if it was all right with the union steward, he would hire him. The steward told Owens that he would hire him then because he needed truck drivers, but that he would have to transfer within thirty days to Local 470. Thereupon, on October 14, Owens was hired.
 
 
 8
 About three weeks later the union steward took Owens to the union office to effect the transfer from Local 182 to Local 470. The secretary-treasurer of respondent Local 470 refused to take Owens' transfer and told the steward to 'knock him off.' The steward, however, did not lay off Owens who continued to work as a truck driver until January 3, 1955, the date of the alleged discriminatory discharge terminating his employment.
 
 
 9
 Between December 27, 1954, and January 3, 1955, the company laid off thirteen drivers because of lack of work. Four of these drivers complained to the business agent of the union that the layoffs were not in accordance with the usual seniority rules. One of them complained that Owens was not a member of Local 470, even though Owens' name was higher than his on the seniority list. The business agent thereupon scratched the name of Owens from the list. Owens was laid off later that day.
 
 
 10
 The company rehired two truckers with less seniority than Owens about five days before Owens was rehired as a laborer by the company. The job was laborer was outside the union jurisdiction. In February and early March of 1955, the company hired truckers it had never before employed and rehired two truckers lower on the seniority list than Owens.
 
 
 11
 On November 30, 1955, nearly two months after the complaint in the present case issued, the company reemployed Owens as a truck driver.
 
 
 12
 The Board's order here requires respondents to cease and desist from performing or giving effect to the bargaining agreements requiring membership in or approval by the union as a condition of employment, and further to desist from renewing or entering into new contracts containing the unlawful provisions.
 
 
 13
 The union and the company argue that they should not be ordered to cease and desist from performing the contracts because their course of conduct indicates that new employees were always given thirty days to join the union notwithstanding the words of the agreement, so that they have complied with the Act in deed, if not in word. They argue further that it is plain that the lay-off of Owens came simply because he lacked seniority. It is our opinion, however, tht the evidence as a whole supports the finding of the Board that the lay-off of Owens was discriminatory, being based not on seniority, but rather on the fact tht he was not a member of Local 470. It will be remembered that only three weeks after the employment of Owens, a union official refused his transfer and ordered the steward to lay him off; also it should be noted tht the business agent scratched his name off the seniority list because he was not a member of respondent Local 470. Further, the discriminatory nature of the lay-off for reasons apart from seniority is demonstrated by the fact that former employees with less seniority than Owens were rehired, and employees never before working for respondent company were hired before Owens was rehired.
 
 
 14
 Another major contention of the union is that the original charge did not apprise them sufficiently of the facts, and that the amended charge was untimely, being filed after the six-month limitation of Section 10(b) of the Act, 29 U.S.C.A. 160(b). If the amended charge introduces a new cause of action, it is barred by Section 10(b); if, however, it properly relates to the original charge, it is timely even though filed after the prescribed limitation period.
 
 The original charge read as follows:
 
 15
 'On or about January 4, 1955 the above named labor organization requested McCloskey & Co. to discharge Getta Owens despite the fact tht Owens was a member of Local 182, of the same International and had requested Local 470 to accept his transfer from this Local.'
 
 The amended charge stated:
 
 16
 'On or about January 4, 1955, the above-named labor organization attempted to cause and caused McCloskey & Company to discriminate against Getta Owens, a truck driver, by demanding or requesting McCloskey & Company to discharge Owens because he was not a member of the above-named labor organization.
 
 
 17
 'On or about January 4, 1955 and at all times since the above-named labor organization and McCloskey & Company have been parties to and have maintained and enforced an agreement or understanding which requires membership in or clearance or approval by the above-named labor organization as a condition of employment.
 
 
 18
 'By the above acts and other acts and conduct the above-named labor organization has restrained and coerced and is restraining and coercing employees in the exercise of their rights guaranteed by Section 7 of the Act (29 U.S.C.A. 157).'
 
 
 19
 It is plain from the first charge that Getta Owens was not a member of Local 470, and the clear inference from the allegation is that this was the reason the union requested the company to discharge him. The amended complaint essentially restates the same allegation and continues in a factual explanation that the discriminatory discharge was pursuant to unlawful union security provisions. Without a detailed discussion of the language used, we are of the opinion that the amended charge, amplifying as it does the original charge and based upon the same factual situation, properly relates to the original charge. It is therefore timely within Section 10(b) of the Act. Cusano v. N.L.R.B., 3 Cir., 1951, 190 F.2d 898. See also N.L.R.B. v. Epstein, 3 Cir., 1953, 203 F.2d 482, certiorari denied 1954, 347 U.S. 912, 74 S.Ct. 474, 98 L.Ed. 1068.
 
 
 20
 The last point raised both by the union and the company questions the power of the Board to order back pay for Getta Owens because he had been reemployed by the company as a laborer about three weeks after the discriminatory discharge. The reasons for his termination of this job are unclear from the record. The respondents argue that since Owens was making a higher wage as a laborer, his back pay should have ended when he was given this job, rather than on November 30, 1955, the cut-off date set by the Board for back pay due Owens. November 30 was the date Owens was rehired by the company as a truck driver. However, respondents before the Board raised only general exceptions to the Trial Examiner's recommendations. Such exceptions did not apprise the Board of any specific objection to a particular term of the order, and we are precluded by Section 10(e) of the Act, 29 U.S.C.A. 160(e), from initially examining the question here. N.L.R.B. v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 350, 73 S.Ct. 287, 97 L.Ed. 377; and N.L.R.B. v. Baldwin Locomotive Works, 3 Cir., 1942, 128 F.2d 39, 50. In any event, the contention attempted to be pressed now for the first time is of doubtful merit. See N.L.R.B. v. Armour & Co., 10 Cir., 1945, 154 F.2d 570, 577, 169 A.L.R. 421, certiorari denied 1946, 329 U.S. 732, 67 S.Ct. 92, 91 L.Ed. 633. No extraordinary circumstance requires us to pass upon it.
 
 
 21
 The order of the Board as prayed for in its petition will be enforced.
 
 
 
 [1]
 The performance of such contracts by the union violates Section 8(b)(1)(A) and (2) of the Act, 29 U.S.C.A. 158(b)(1)(A), (2), when a company gives effect to such contracts, it violates Section 8(a)(1) and (3) of the Act
 
 
 [2]
 The union here is charged with violation of Section 8(b)(2) of the Act; and the company is charged with violation of Section 8(a)(1) and (3) of the Act