### INLAND LIME & STONE CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 7445.

Circuit Court of Appeals, Seventh Circuit.

March 13, 1941.

---

sented the majority of the employees. When that was furnished, it accepted the proof, and the right of said union to represent the employees was never thereafter challenged or questioned. Petitioner's position, however, is that it did, in fact and in good faith, negotiate with the Union.

Respondent's argument is based on its findings that the negotiations which petitioner conducted were not in good faith. The employer was not acting sincerely, so it asserts, and this is tantamount to not acting at all.

In support of petitioner's position it points to its record of willingness at all times to meet and negotiate. The chronological sequence of its actions in this respect are:

| | |
|---|---|
| April 7, 1939. | Union Representative Hodge told Company Superintendent Cayia the Union had a majority and requested a meeting for the purpose of bargaining collectively. Cayia agreed. |
| April 10. | Conference of Union committee with Cayia and his assistant Heitman. No bargaining yet. |
| April 17. | Cayia asks for proof of majority. |
| April 26. | Majority proved to satisfaction of Company. |
| May 1. | First bargaining meeting, between Union committee and Cayia. Some 8 hours' discussion of tentative contract proposed by Union. |
| May 4. | Revised copy of tentative contract comes to Cayia's desk. |
| May 8. | Company posts announcement of company vacation plan for 1939. |
| May 10. | Second bargaining meeting, dissolved without reaching any conclusions |
| May 11. | Third bargaining meeting. No agreement. |
| May 22. | Union files charges with Regional Director. |
| June 9. | Meeting of Union committee, Board Examiner Hoebreckx and Cayia and Heitman. Broke up without accomplishing anything. |

E. S. Ballard, Merrill Shepard, and Ralph E. Bowers, all of Chicago, Ill., for petitioner.

Robert B. Watts, General Counsel, NLRB, of Washington, D.C., for respondent.

Before EVANS and KERNER, Circuit Judges, and WOODWARD, District Judge.

EVANS, Circuit Judge.

Petitioner denies that it refused to bargain collectively with the union authorized to represent the employees. Such a charge was preferred against it, and the Board found unfair labor practices, because of it. If petitioner's position be sound, the order of the Labor Board must fall. Other questions are minor.

Petitioner has recognized, and does recognize, the right of the union to represent its employees. It first demanded proof that the International Union of Mine, Mill and Smelter Workers Local #377 repre-

■ The limit of our authority is to ascertain the existence of substantial evidence to sustain the Board's finding. Our duties and also our powers are limited by the statute. If there be any substantial evidence to support the Board's finding, we must accept it. The distinction between some evidence and substantial evidence is not in this case worthy of recognition.

■ The following facts support the finding of the Board. For each fact there is support (although it may be disputed) in the evidence.

22

The superintendent, Cayia, was authorized to bargain on behalf of the Employer with the Union. So acting, he met with the Union. An agreement was reached on several points of a proposed contract. He, however, refused "to promise" to sign any *written* agreement. On May 8th, he denied that he had agreed to anything. One of the subjects upon which the Union was negotiating was the matter of vacations. No agreement was reached upon it, and it was one of the subjects to be considered at the adjourned meeting on May 10th. On May 8th, the Company posted notice of its vacation plan. The point of difference was the length of service, before vacation with pay, was allowed. The Company had previously granted some vacations after five years of service, and the Union wanted the same allowances after three years of service. On May 8th the Company disposed of the matter by announcing its vacation rule. Cayia gave the impression to the employees that if the agreement was satisfactory he would sign it. On May 10th, when the Union suggested that discussion be confined to the points not settled, Cayia reported he had not agreed on anything. When Hodge asked him if he would submit propositions, he stated he was under no obligation to do so. He said that the Union, as the complaining party, must submit all proposals, and he, as the Company representative, only needed to accept or reject. After this statement was made the meeting was again adjourned, but to no future date.

Even after charges were made by the Union with the Board, a representative of the latter called upon Cayia for a consideration of the proposed contract. Cayia refused to consider it. He informed the Board's representative that he had already rejected the contract and would waste no time in reviewing it. He was then asked to give proposals, and Cayia said it was not his duty to offer them. At the meeting of May 11, Cayia refused to discuss the redrafted contract.

Most significant was the action of Cayia in announcing the vacation rule two days before the May 10th meeting, when it was to be the subject of "bargaining" between employer and the Union. This action was more than merely tactless. It evidenced a wilful and deliberate contempt for the whole plan of collective bargaining. It was fairly inferable that the employer, by this action, intended to humiliate the Union representatives and discredit them in the eyes of their fellow employees. It reflected on the alleged good faith of petitioner's recognition of the Union as a bargaining agent. While it is not all of the evidence decisive of the determinative question before us, it weighs rather heavily against petitioner. Upon all the evidence we must find there was support for the crucial finding which petitioner assails.

■ Respecting the Board's order, little need be said. The contention advanced by petitioner that it should not be required to sign an agreement which it might ultimately reach with the employees, while supported by what occurred in the Senate (Congressional Record, Vol. 79, No. 102) when the Wagner Act, 29 U.S.C.A. § 151 et seq., was being argued and amended, is now settled, contrary to the views expressed by the Senators when the bill was passed, and contrary to petitioner's contention, by the decision of the Supreme Court in Heinz v. National Labor Relations Board, 61 S.Ct. 320, 85 L.Ed. ——, decided January 6, 1941.

■ The argument that the application was not properly before the Board for the reason that the parties had not, at said date, concluded their collective bargaining, is unsupported by the evidence. Cayia's statement to the Board's representative left no room for doubt. True, the employees might have sought further hearings, but the statement of Cayia, above quoted, to the Board's agent left no room for successful contention that negotiations were still pending.

The relief sought by petitioner must be, and is, denied.

The relief sought by the respondent in its request for enforcement of its order, must be, and is, granted.