**NATIONAL LABOR RELATIONS BOARD v. CALUMET STEEL DIVISION OF BORG–WARNER CORPORATION.**

No. 7605.

Circuit Court of Appeals, Seventh Circuit.
June 12, 1941.

Robert B. Watts, of Washington, D. C., I. S. Dorfman, of Chicago, Ill., and Lester M. Levin, of Washington, D. C., for petitioner.

Ernest S. Ballard, Henry M. Thullen, Merrill Shepard, and Owen Fairweather, all of Chicago, Ill., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This case is before us on the petition of the National Labor Relations Board for the enforcement of an order issued by it against respondent, a division of the Borg-Warner Corporation, an Illinois corporation. The principal issue turns on the validity of an election at which the Steel Workers Organizing Committee for the Amalgamated Association of Iron, Steel & Tin Workers of North America, Local 1027, was chosen as the collective bargaining agent of the employees of the respondent's factory at Chicago Heights, Illinois.

The election was held on November 15, 1937, pursuant to a prior order of the Board. Of the 431 ballots cast, 2 were void, 9 were challenged, 180 were cast for

the Chicago Heights Steel Workers Protective Association, 210 for Local 1027 and 30 for neither organization. Later, on January 12, 1938, a hearing was held which related to the challenges, and the Board decided that in determining the results of the election 6 of the 9 challenged ballots should be opened and counted and the remaining 3 discarded as improperly cast. This was done and thereafter, on May 21, 1938, the Board certified Local 1027 as the exclusive bargaining representative of the employees, finding as it did that Local 1027 had received 215 of the 426 valid ballots cast at the election. Virginian Ry. Co. v. System Federation, 4 Cir., 84 F.2d 641, 652; Association of Clerical Employees v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 85 F.2d 152, 156, 109 A.L.R. 345. The respondent, however, refused to recognize Local 1027 as the collective bargaining agent on the ground that the certification was invalid. This refusal to bargain was followed by the instant complaint proceeding, in which respondent was charged with the violation of Sections 8(1) and 8(5), National Labor Relations Act, 29 U.S.C.A. § 158(1, 5), and which resulted after hearings in the order of April 23, 1940, now before us.

The findings in the representation proceeding as to the bargaining unit and as to the majority status of Local 1027 were reaffirmed by the Board in the complaint proceeding. Nor does the respondent really complain of the finding that the "hourly paid production and maintenance employees * * * excluding foremen, assistant foremen, watchmen, and all other supervisory employees [also the clerical employees], constitute a unit appropriate for the purposes of collective bargaining. * * *" In fact the Association and Local 1027 in the representation proceeding agreed that this unit was appropriate and respondent entered no objection to the unit. See National Labor Relations Board v. Chicago Apparatus Co., 7 Cir., 116 F.2d 753, 755. The respondent disputes the majority status of Local 1027, however, and advances the argument (1) that certain employees were improperly classified as belonging within or without the unit, and (2) that the certification was based upon a stale record.

The voting on election day was conducted under the supervision of the Board's agent and with the aid of tellers representing the Association and Local 1027. It turned out that among others two employees, Formentini and Tavoletti, were not permitted to vote "upon challenge or otherwise," the Board's agent ruling them ineligible on the ground that the former was a clerical and supervisory employee and the latter an assistant foreman. In addition the Association challenged the ballots cast by Pearson, Jahnke, Kocher, Behlke and McClendon, who were employed as heaters and constituted part of the crew operating the furnaces. Local 1027 challenged the ballots cast by Fred Miller, Siebert, Flodin and Stuebe, who in the main, with the possible exception of Miller, performed work of a clerical character.

Later, at the hearing held on January 12, 1938, evidence was introduced as to the nature of the work performed by the heaters and the "clerks" in question, but no reference was made to Formentini and Tavoletti in any regard. The evidence adduced by the Association tended to show that the heaters exercised supervisory authority over the furnace crew, and that the particular "clerks" performed work of a physical character. The evidence adduced by Local 1027 tended to show that the heaters performed the same work as their fellow crew members and at the same time exerted a limited authority over the crew in respect to the mechanical operation of the furnaces, and that the "clerks" performed clerical tasks. The Board determined that the heaters and Miller should be included in the bargaining unit and directed that their ballots be opened and counted.

The Board was faced with an obvious conflict in the evidence, and under the circumstances we are not permitted to say that its determination was erroneous.

■ It appears that Siebert checked orders and materials in the post-fabricating department, that Flodin was a stock clerk in the shipping department, that Stuebe checked and recorded weights in the shipping department and that Miller, though often engaged in some clerical task, worked mainly as a loader in the reinforcing department. We are satisfied that the different treatment accorded Miller was entirely reasonable.

■ It also appears that the heaters were primarily engaged in the same physical work as their fellow crew members, and that the rollers, not the heaters, decided the schedule of material to be run through the furnaces, ordered the repair

of the furnaces and exercised the disciplinary power over the members of the furnace crew. The heaters testified that they did not consider themselves to be "bosses" over their fellow crew members, stated that they were eligible to membership in the labor organizations and denied that they possessed any power to hire or discharge. It is reasonable to conclude, as did the Board, that the heaters, though possessing some indicia of supervisory authority with respect to mechanical operations, were allied in interest and in the character of the work with their fellow crew members.

The respondent contends that the heaters were of a higher supervisory rank than that occupied by Formentini and Tavoletti, and that hence the Board erred in including them in the bargaining unit. In the complaint proceeding one of respondent's witnesses stated that in his opinion Formentini and Tavoletti were "lower grade" non-management supervisory employees whereas the heaters were "very definitely in the non-management supervisory class." This same witness admitted, however, that Tavoletti was an assistant roller and often took the place of the roller who was foreman of the heaters, and that his position and that of the heaters were "not in the same category." On the other hand, Formentini was a "stock shearman" in the finishing and shipping department, a position clearly unlike that of the heaters.

We believe that the inclusion of the heaters within the bargaining unit was proper. We are not as certain that the Board's exclusion of Formentini and Tavoletti from the unit is consistent with the inclusion therein of the heaters, but we are inclined to think that the rulings are not inconsistent. Obviously their respective duties form no reasonable basis for comparison, and there is the circumstance that neither the labor organizations nor the respondent deemed it material to raise the question of inconsistency at the hearing held on January 12, 1938.

Even if we assume inconsistency of rulings, our conclusion would not be the one urged by the respondent, that is, that in ruling as it did with respect to Formentini and Tavoletti the Board had "finally and irrevocably concluded itself in respect of any decision to accord the franchise" to the heaters. To us it does not follow that the improper exclusion of the one should operate to prevent the proper inclusion of the other. At the most our conclusion would be that the exclusion of Formentini and Tavoletti was improper, but this would net us nothing, the result of the election remaining unaffected nevertheless.

The respondent argues that the Board's inclusion of the heaters was erroneously based on its experience in Matter of Interlake Iron Corp., 4 N.L.R.B. 55, where the heaters were permitted to vote on election day. There the heaters were engaged exclusively in a coke oven operation and expressly named as coming within the appropriate bargaining unit. Indeed it is plausible to argue that the duties and authority of the heaters employed by the Interlake Iron Corporation, could not possibly be used as a standard of comparison in this case. We do not believe, however, that it can be said that the Board's inclusion in this case was dictated by the Interlake case. Certainly we do not attach such effect to the following words, scored by the respondent and stated by the Board in its Decision and Certification of Representatives: "We have heretofore, in Matter of Interlake Iron Corporation, supra, held that a heater, paid monthly and doing the same type of work as hourly paid heaters, should be included within the bargaining unit comprising the ordinary production workers. We see no reason, upon considering the duties and powers of the heaters in this case, to deviate from that ruling, and it is adopted." It is to be observed that in its Decision and Order in the case upon the complaint here before the Court, the Board pointed out the following: "The Board's finding in the Interlake Iron Corporation case was not the determining factor influencing its decision in regard to the heaters in the representation case involving the respondent." We are satisfied that respondent's point is not well taken.

■ Respondent also argues that the Board is bound by the language used in Matter of Inland Steel Co., 9 N.L.R.B. 783, 789, where it excluded "non-management supervisory employees as well as management supervisory employees from the appropriate unit." It is true that "Consistency in administrative rulings is essential, for to adopt different standards for similar situations is to act arbitrarily." See National Labor Relations Board v. Mall Tool Co., 7 Cir., 119 F.2d 700, decided by this court on March 20, 1941. But there is an "allowable area" for the play of ad-

ministrative discretion. See Phelps Dodge Corp. v. National Labor Relations Board, 61 S.Ct. 845, 85 L.Ed. ——, decided by the Supreme Court on April 28, 1941. Nor can we overlook that § 9(b) of the Act, 29 U.S.C.A. § 159(b), authorizes the Board to "decide in each case" what the appropriate bargaining unit shall be. See Pittsburgh Plate Glass Co. v. National Labor Relations Board, 61 S.Ct. 908, 85 L.Ed. ——, decided by the Supreme Court on April 28, 1941. We note that after reviewing the evidence and conditions peculiar to the Inland Steel case, supra, the Board concluded (9 N.L.R.B. page 789) that "Clearly, both categories of supervisors are closer to management than to the men." In other words, the criterion there used by the Board, that is, whether the interests of the employees be predominately with the management or the men, was really the criterion by which the Board judged the status of the heaters in the instant case.

■ Respondent complains because a considerable amount of time ensued between the date of the election (November 15, 1937) and the date of the certification by the Board (May 21, 1938). It is reasonable to suppose that this lapse of time was occasioned in the main by the necessity for a further hearing after the election and for the disposition of various motions, exceptions and objections. Under the circumstances a lapse of time was inevitable and a certain amount of delay unavoidable. Respondent cannot utilize the procedure prescribed for the enforcement of the Act, as a basis for not enforcing it.

■ In this connection respondent shows that some 58 employees who had been included in the appropriate bargaining unit, were no longer employed by the respondent on May 21, 1938. However, we note that the respondent fails to show that this change of personnel during the period operated to reduce the majority standing of Local 1027. Nor for that matter did the Association or any of the employees see fit to challenge the majority status of Local 1027 on this ground. There is no merit in the contention that the certification was based on a stale record.

Respondent makes much of the circumstance that the motion of the Association for reconsideration and amendment of the Decision and Certification of Representatives, filed May 28, 1938, was not acted upon until April 20, 1939, when it was denied. The Board states that the delay occurred "through inadvertence," and we are given no reason for denying credence to this statement. The record shows that a similar motion, filed by the respondent on May 31, 1938, and containing in substance the same claims, was denied on June 6, 1938.

As we see it on this record, an election was held, the employees chose Local 1027, and the employer (not the employees or the Association) disputed this choice because the Board took too long a time to run off the election. We cannot agree that such a complaint would warrant refusal to enforce the order of the Board.

■ On June 1, 1938, the respondent refused to bargain collectively with Local 1027 on the theory that the certification was not final until the disposition of its motion to reconsider and amend. The respondent refused to bargain collectively after its motion was denied on June 6, 1938, this time stating that the certification was erroneous. Each refusal to respect the certification was accompanied by an offer to bargain with Local 1027 as representative of its members only, and finally in September of 1938 Local 1027 met with the respondent to negotiate a contract for its members only. At the third conference the respondent refused to sign a contract and negotiations were discontinued until May of 1939 and after the Board had denied the motion of the Association to reconsider and amend. Thereafter respondent refused to sign a proposed contract for recognition of Local 1027 as exclusive bargaining representative of the employees, and offered instead to prepare a "labor policy" or unilateral contract embodying some of the terms of the proposed agreement. Negotiations were thereupon discontinued and were not renewed.

It is not necessary at this point to extend the discussion as to the law in the matter. It is sufficient to conclude that respondent's conduct was in plain violation of Sections 8(1) and 8(5) of the Act. See the following cases which are controlling. Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 524, 526, 61 S.Ct. 320, 85 L.Ed. 309; National Licorice v. National Labor Relations Board, 309 U.S. 350, 358, 60 S.Ct. 569, 84 L.Ed. 799; McQuay-Norris v. National Labor Relations Board, 7 Cir., 116 F.2d 748, 751. See also Inland Lime & Stone v. National Labor Relations Board, 7 Cir., 119 F.2d 20; National Labor Relations Board v.

Boss Mfg. Co., 7 Cir., 118 F.2d 187, and Singer Mfg. Co. v. National Labor Relations Board, 7 Cir., 119 F.2d 131. In fact, granting the validity of the certification, the respondent would not argue that it bargained in good faith. In this court respondent argues only that it was not required to bargain collectively in the absence of a valid certification, but on this point we have already decided in favor of validity.

It follows that the order as to collective bargaining is proper and within the discretionary powers of the Board. Nor may it be said that a bargaining order at this time is not warranted. The certification is still in full force and effect, and the record shows not an impairment of the majority status of Local 1027 since its certification but a failure on the part of the respondent to do that which it should have done long ago. See Valley Mould & Iron Corp. v. National Labor Relations Board, 7 Cir., 116 F.2d 760, 765; also National Labor Relations Board v. Whittier Mills, 5 Cir., 111 F.2d 474, 478, and National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 640.

■ With respect to industrial espionage, there is evidence that the respondent availed itself of labor spy services in 1935 and discontinued these services around March 1, 1937, some 14 months prior to the filing of the charge dated May 5, 1938. In reaching this conclusion we have ignored the report of the LaFollette Senate Subcommittee on Education and Labor, and have studied the authorities cited, especially Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819. Obviously this conduct violated Section 8(1) of the Act, and consequently paragraph 1(b) of the order barring the resumption of such activity was not improper. See Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126. Cf. National Labor Relations Board v. Illinois Tool Works, 7 Cir., 119 F.2d 356. We must remember that "The Board not the courts determines under this statutory scheme how the effect of unfair labor practices may be expunged." National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 600, 61 S.Ct. 358, 366, 85 L.Ed. 368.

■ However, paragraph 1(c) of the order will be modified so as to require only that the respondent shall cease and desist from "In any manner interfering with the efforts of Lodge 1027 to bargain collectively with Calumet Steel Division of Borg-Warner Corporation, Chicago Heights, Illinois." See National Labor Relations Board v. Express Publishing Co., March 3, 1941, 61 S.Ct. 693, 697, 85 L.Ed. ——

It is so ordered.

SPARKS, Circuit Judge.
I concur in result.