**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BIRDSALL CONSTRUCTION COMPANY, Respondent.**

No. 73–1412
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 20, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Harold A. Boire, Director, Region 12, N. L. R. B., Tampa, Fla., for petitioner.

Alan A. Bruckner, Richard I. Manas, Miami, Fla., Allan M. Elster, North Miami Beach, Fla., for respondent.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The Board found that Employer, Birdsall Construction Company, committed an unfair labor practice in violation of 8(a)(1), NLRA, 29 U.S.C.A. § 158(a), ordered Employer to "cease and desist from coercively interrogating employees about their union membership, views or sympathies", set aside a representation election in which the employees had rejected local 1680, International Longshoreman's Association's bid to become the collective bargaining agent of the employees and ordered that a new election be held. Employer petitions us to set aside the Board order. We enforce.

In March 1971 a union representation election was held in Employer's plant in Riviera Beach, Florida. Prior to the election, John Birdsall, III, vice-president of Employer, made two speeches to the employees. Birdsall delivered the first speech extemporaneously and read the second speech verbatim from a carefully prepared text which had been edited by the company's attorney. The Administrative Law Judge found that the two speeches were substantially similar. In the second speech, Birdsall pointed out that a large amount of the company's business came through the ports of Miami and Ft. Lauderdale, that Birdsall operated a trucking service to carry this freight between Riviera Beach and these ports, that the company was in competition with shippers at these ports who did not incur this extra transportation

expense, and that the company was able to compete with these unionized firms because it did not incur the added cost of an ILA contract. Birdsall cautioned the employees that if ILA won the representation election, the company would also incur the additional cost of the union contract and would have to seriously consider moving its operation to Miami or Ft. Lauderdale in order to remain competitive. Birdsall also warned the employees of the possibility of lengthy strikes, the employer's right to replace economic strikers, and of the union referral system all of which could have an adverse effect on the well being of the employees in the event that the union were to win the election. These warnings were all carefully couched in conjectural language.

Birdsall and four employees testified before the Administrative Law Judge concerning the content of private conversations between Birdsall and the employees preceding, in between and subsequent to the speeches. There were substantial differences between Birdsall's recollection of these conversations as compared with the recollections of the four employees. Birdsall asserted that he had asked the employees whether they had any questions concerning his speech. He also admitted asking two employees whether they understood the implications of the upcoming election, and asking one whether he had ever belonged to a union, whether he knew what it meant to belong to a union and then repeated the warning previously made in his speeches regarding the possibility that unionization would cause the company to relocate.

On the other hand, all four employees testified that Birdsall had told them that if the union won the election, the company would move. Three of the employees testified that Birdsall asked them how they felt about the union, while the fourth testified that Birdsall asked him what he knew about the union. One employee testified that Bird-

sall asked him whether he would be able to move to Miami and another testified that Birdsall asked him whether he belonged to a union. The Administrative Law Judge found that Birdsall's statements in these private conversations concerning the necessity of moving to Miami, while probably not stated as strongly as the employees remembered them to have been, were no doubt less guarded than in the speeches. He also found that the employees' testimony detailing Birdsall's interrogation concerning the union sympathies of the employees was "substantially as they testified." [1] Birdsall admitted speaking privately with approximately 20 employees in "the same vein" as his conversations with the four who testified at the hearing.

On March 19 the election was held and the employees rejected ILA by a vote of 20 to 14. An unfair labor practice case and a representation case concerning the pre-election conduct of the employer were consolidated and heard by an Administrative Law Judge. He found that the employer violated, interfered with, restrained, and coerced the employees in the exercise of their § 7 rights in violation of § 8(a)(1) of the Act by means of veiled threats to relocate the company's operations in the event that the union won the election in Birdsall's speeches and by Birdsall's coercive interrogation of the employees regarding their union sympathies. He further found that the veiled threats to move, coupled with suggestions that the company might enter into a hiring arrangement with the union which would be unfavorable to the company's employees, if the union won the election, interfered with the employees exercise of a free and untrammeled choice in the election. On these findings a cease and desist order was proposed.

The Board set aside the Administrative Law Judge's finding regarding veiled threats in Birdsall's speeches, hold-

---

1. There is no merit to Employer's contention that the Administrative Law Judge did not make the requisite findings of fact on the issue of credibility to support his decision.

ing instead that the speeches were within the area of employer free speech protected by § 8(c) of the Act. The Board also set aside the finding concerning the threat of a discriminatory union referral system on the ground that it was not properly raised in the hearing. The Board sustained the holding that the interrogations pertaining to union sympathies constituted an unfair labor practice and then ordered that the election be set aside because "conduct violative of § 8(a)(1) a fortiori interferes with the exercise of a free and untrammeled choice in an election. Dal-Tex Optical Company, 137 NLRB 1782."

In view of the totality of circumstances surrounding the systematic interrogations of employees regarding their union sympathies the Board could properly conclude that the employer violated § 8(a)(1) of the Act. See NLRB v. Camco Inc., 5 Cir., 1965, 340 F.2d 803, 804, cert. denied, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339.

The time, place and manner of the interrogations enhanced the possibility of employee coercion. The interrogation was conducted by John Birdsall, III, a vice-president of the company, whose strong anti-union views were well known and frequently voiced. The interrogation took place with no one present other than Birdsall and each individual employee. Birdsall called three of the four employees who testified away from their work to speak with them. No assurances against reprisals were ever given to any of the interrogated employees. There was ample evidence to sustain the Board's finding that the interrogations in the light of the total circumstances could be expected to bring about fear of reprisals. See, NLRB v. Universal Cigar Corp., 5 Cir., 1970, 425 F.2d 867, cert. denied, 400 U.S. 904, 91 S.Ct. 142, 27 L.Ed.2d 140 (1970); NLRB v. Sunnyland Packing Company, 5 Cir., 1966, 369 F.2d 787. The weighing process of NLRB v. Varo, Inc., 5 Cir., 1970, 425 F.2d 293, fully justified this conclusion.

All four employees who testified asserted that Birdsall definitely stated that the company would move to Miami if the union won the election. The Board found that the carefully worded predictions in Birdsall's speeches pertaining to the necessity of relocating the plant were protected under § 8(c). But his talk was not limited to the speeches. The Board at least inferentially credited the findings that Birdsall's statements during the private interrogations regarding the potentiality of relocation were "in terms less guarded than those embodied in the carefully phrased and edited speech which he read." This Court has held that interrogation accompanied by veiled threats that the plant would close down before it would operate under a union contract violated § 8(a)(1). NLRB v. Standard Forge and Axle Company, 5 Cir., 1969, 420 F.2d 508.

There is no evidence of discrimination against union members or anti-union hostility in terms of previous unfair labor practices in the plant. Nevertheless Birdsall's speeches and his interrogation clearly conveyed the impression to the employees that the company was vigorously opposed to the union. To this extent they may be considered as "background" of employer hostility toward the union. See Hendrix Manufacturing Company v. NLRB, 5 Cir., 1963, 321 F.2d 100; NLRB v. Griggs, 5 Cir., 1962, 307 F.2d 275. The aggregation of these circumstances supports the Board's finding of an 8(a)(1) violation and the Board's requiring a new election.

We find no merit in appellant's contention that the Administrative Law Judge should have dismissed the complaint due to General Counsel's failure to call a witness who had submitted an affidavit to the Regional Director during the investigation of the case.

The NLRB Public Field Manual which provides that Regional Counsel should assure that evidence adduced during an RC investigation is included in

the record[2] is not a rule or regulation promulgated by the Board and binding on the Administrative Law Judge but rather a set of procedural guidelines designed to aid the Regional Counsel in preparing and conducting the case. It had no relevance to the unfair labor practice hearing.

Enforced.

---

2. NLRB Public Field Manual § 11424.4 (Rev.Ed.1971).

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.