NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GREAT WESTERN COCA–COLA BOT-
TLING COMPANY, Respondent.

No. 83–4657.

United States Court of Appeals,
Fifth Circuit.

Sept. 4, 1984.

Elliott Moore, Elaine Patrick, Deputy Associate Gen. Counsels, N.L.R.B., Washington, D.C., for petitioner.

Fulbright & Jaworski, T.J. Wray, L.G. Clinton, Jr., Susan J. Piller, Houston, Tex., for respondent.

Before GEE, POLITZ, and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order finding Great Western Coca Cola Bottling Company guilty of various unfair labor practices and granting relief.[1] For the reasons set forth below, we conclude that the order should be enforced as modified herein.

## I. Factual and Procedural Background.[2]

Great Western Coca Cola Bottling Company (the "Company") operates several facilities in the Houston metropolitan area. In 1978, the Company entered into a collective bargaining agreement with Sales Drivers, Deliverymen, Warehousemen & Helpers, Local 949, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (the "Union"), which designated the Union as the exclusive bargaining representative for a unit of some 550 production and maintenance employees at the Company's facilities. The agreement was to expire on November 30, 1979. Among its terms was a provision relating to the right of Union representatives to have access to the Company's premises.[3]

On September 27, 1979, a decertification petition was filed with the Board pursuant to 29 U.S.C. § 159(c)(1)(A)(ii) (1982). On November 20, after a dispute between the Company and the Union regarding Union Business Agent Guadalupe Vasquez' efforts to gain access to the Company's premises, the Company sent Union Busi-

1. 265 N.L.R.B. 766 (1982).

2. Because the ALJ's findings exhaustively recount the facts, see 265 N.L.R.B. 766, we recite them only briefly.

3. The agreement provided:

 The Company agrees that the Union representatives may have access to the plant at reasonable times upon reasonable notice to the Company, for the purpose of investigating grievances or conducting other business pertaining to the employees covered by this Agreement. The Union representative must first report to the representative designated by the Company, and shall not in any manner interfere with the job duties of any employee, or production, or operations of the Company.

ness Manager Ronald Teague a letter in which, in light of the decertification petition, the Company articulated its position and policy with regard to access to its premises by Union representatives. Thereafter, until early December, the parties essentially complied with the terms of the letter.

On December 11, 1979, at the request of a Company employee, Teague and Vasquez requested permission to visit one of the Company's facilities. The Company representatives with whom they spoke denied the request. They went to the facility nonetheless, whereupon Company supervisor Elbert Hill called the Harris County Sheriff's Department and had them arrested. Numerous employees, including Willie Jones, witnessed the confrontation and arrest. On December 13 and 14, the Company orally and in writing notified Teague that Union representatives would thereafter have access to Company facilities only in "instances of specific complaints or grievances signed by employees and presented in writing by the Union to the Company."

In mid-December, Company supervisor Hill summoned employee Willie Jones into his office and asked Jones whether he belonged to the Union. Although he was a member, Jones denied membership. Hill told Jones that he "did not have to lie," and that Hill knew that two of Jones' co-workers were Union members. Jones again denied membership and stated that he did not know that the other employees were Union members.

As a result of the foregoing, the Board issued an unfair labor practices complaint against the Company. The complaint alleged that the Company violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) & (5) (1982),[4] by unilaterally imposing restrictions on the Union represent-

atives' access to Company facilities and by causing them to be arrested, and by interrogating an employee about his union affiliation and creating the impression that the Company was conducting surveillance of its employees' union activities.

The conduct alleged to be unfair labor practices was also at issue in a concurrent representation proceeding between the Company and the Union. On April 17, 1980, the Board conducted a decertification election pursuant to the decertification petition that had been filed. The Union lost the election and filed objections asserting, *inter alia*, that the Company's unfair labor practices had interfered with the election. The Board's Regional Director consolidated the unfair labor practice and representation proceedings for the purpose of holding a hearing.

A hearing was held before an Administrative Law Judge ("ALJ"). With regard to the unfair labor practice claim, the ALJ found that the Company had violated section 8(a)(1) of the NLRA on December 11, 1979, by denying Union representatives access to its facility and causing their arrest; that the Company had violated sections 8(a)(1) and 8(a)(5) of the NLRA on December 13 and 14 by unilaterally imposing new restrictions on the Union representatives' access to its premises; and that the Company violated section 8(a)(1) of the NLRA by interrogating Willie Jones about his union membership and by creating the impression that it was conducting surveillance of employees' union activities. The ALJ recommended that the Board order the Company to cease and desist from these unfair labor practices, and to rescind the unilateral changes that it had imposed. With regard to the representation proceeding, the ALJ found for the Union and recommended that the decertification election be set aside and that the representation proceeding be re-

---

**4.** Section 8(a)(1) provides:

It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title ....

Section 8(a)(5) provides:

It shall be an unfair labor practice for an employer—

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

manded to the Regional Director so that a new election could be held when he deemed appropriate. The Board's decision and order adopted the ALJ's findings and, with minor modifications not relevant here, adopted the ALJ's recommendations.

Subsequent to the Board's decision, the Union merged with another labor organization, Local 988.[5] The Company filed with the Board motions for reconsideration and to reopen the record, alleging that the merger had been effected without permitting nonmember employees to vote in the merger election, thus precluding Local 988 from succeeding the Union as the bargaining representative of the Company's employees. The Board denied the motion for reconsideration and referred the motion to reopen the record to the Regional Director for disposition in the representation proceeding. The Regional Director denied the motion, finding that the merged organization could appear on the ballot in the second decertification election as the valid successor to the Union and that the second decertification election would be tantamount to affording all employees an opportunity to approve or disapprove the merger. The Company's appeal from these determinations as well as its renewed motion for reconsideration were denied by the Board.

## II. The Enforcement Proceeding.

The parties are before us on the Board's petition seeking enforcement of its order against the Company. *See* 29 U.S.C. § 160(e) (1982).[6] The Company argues against enforcement, contending that its actions on December 11, 13 and 14 did not violate the NLRA because once the petition for decertification had been filed and the collective bargaining agreement expired on November 30, it was entitled unilaterally to institute changes in the erstwhile agreement. The Company also asserts that the conversation between employee Willie Jones and his supervisor was an isolated event and not unlawful. We will address these arguments in turn.

### A. The Effect of Unilateral Change in the Terms of the Collective Bargaining Agreement.

The Company asserts that the Board applied an erroneous legal standard in concluding that the Company's conduct in refusing Union representatives access to the Company's plant on December 11 and in instituting unilateral changes in the collective bargaining agreement on December 13 and 14 constituted unfair labor practices.[7] The Company argues that under *Telautograph Corp.*, 199 N.L.R.B. 892 (1972), where a question concerning representation has been raised by the filing of a decertification petition, the employer is precluded from bargaining with the Union until the question concerning representation has been resolved by the Board. The Company contends that because the duty to

---

**5.** Teamsters Freight, Tank Line & Automobile Industry Employees Local Union No. 988.

**6.** Section 160(e) provides, in pertinent part:

The Board shall have power to petition any court of appeals of the United States ... within any circuit ... wherein the unfair labor practice in question occurred ... for the enforcement of such order .... Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board.

\* \* \* \* \* \*

*The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive.*

\* \* \* \* \* \*

(Emphasis added.)

**7.** The Company also argues that its denial of access did not substantially deviate from the terms of the collective bargaining agreement and that it did not effect a "material, substantial, and significant" change in the existing practices. *See Peerless Food Products, Inc.*, 236 N.L.R.B. 161 (1978). The Board determined otherwise, and our review of the record establishes that this determination was supported by substantial evidence; thus, we decline to disturb it. *See* 29 U.S.C. § 160(e), *supra* note 4.

refrain from making unilateral changes is an aspect of the duty to bargain, *Telautograph* frees the employer to make unilateral changes during the pendency of the question concerning representation.

As an initial matter we note that the Board prospectively overruled *Telautograph* in *Dresser Industries, Inc.*, 264 N.L.R.B. 1088 (1982). However, because the instant case arose prior to *Dresser*, its disposition depends on *Telautograph* and its progeny. Of course, our analysis and that of the Board have future utility only to the extent that they are applied to cases, such as the present one, that arose before *Dresser*.

We are not persuaded by the Company's argument. While *Telautograph* did stand for the first proposition for which the Company cites it, we do not agree that it went so far as to permit the employer to impose unilateral changes on the collective bargaining agreement during the pendency of a question concerning representation. The issue in *Telautograph* was whether an employer is obligated to bargain with a union whose representative status is at issue. The Board answered that question in the negative, holding instead that in those circumstances, the imperative of employer neutrality compelled the conclusion that an employer was foreclosed from negotiating with the incumbent union. *Telautograph* did not undermine, however, the well settled premise that even after the parties' agreement has expired, practices that have developed under the agreement must remain unchanged unless the employer affords the employees' representative notice of any proposed change and a meaningful bargaining opportunity. *See NLRB v. Katz*, 369 U.S. 736, 743–45, 82 S.Ct. 1107, 1111–1112, 8 L.Ed.2d 230 (1962); *Electric Machinery Co. v. NLRB*, 653 F.2d 958, 962, 964 (5th Cir.1981). Because *Telautograph* precluded bargaining after a question concerning representation has been raised, we agree with the Board that where, as here, the expiration of the contract coincided with the filing of a decertification petition, the employer was dually bound not to bargain on the one hand, and to refrain from imposing unilateral changes on the other.

■ Our conclusion is supported, moreover, by the Board's decision in *Turbodyne Corp.*, 226 N.L.R.B. 522 (1976), which was decided after *Telautograph*. There, the Board examined the employer's duty to remain neutral where a pending question concerning representation remained unresolved at the expiration of the parties' agreement. The Board held that while it would not have been improper for the parties to extend temporarily the terms of the expired agreement, "a violation of Section 8(a)(5) and (1) of the Act occurs when an employer unilaterally institutes certain basic changes in the collective bargaining agreement pending resolution of the QCR [question concerning representation]." 226 N.L.R.B. at 525. It is clear that access by the employees' representatives constitutes a mandatory bargaining subject, *see, e.g., Campo Slacks, Inc.*, 250 N.L.R.B. 420, 429, *enforced without opinion*, 659 F.2d 1069 (3d Cir.1981); *Boyer Bros. Inc.*, 217 N.L.R.B. 342, 344 (1975), and a unilateral change in the manner and degree of access afforded the employees' representative constitutes a "basic change" in the agreement. Thus, we think that *Turbodyne* mandates the Board's determination here that an employer commits an unfair labor practice by unilaterally imposing new restrictions on such access upon expiration of the contract and while a question concerning representation is pending.

■ We are aware that the Board approved unilateral changes in certain situations subsequent to *Telautograph*. However, we agree with the Board's conclusion here that those cases, relied upon by the Company, are inapposite to the instant circumstances. In *Ellex Transportation, Inc.*, 217 N.L.R.B. 750 (1975), the unilateral change implemented by the employer and approved by the Board was the granting of wage and pension benefits that could otherwise not have been extended subsequent to the contract's expiration because they were explicitly tied to the contract. *Id.* at 757. Similarly, in *Vernon Manufacturing Co.*,

214 N.L.R.B. 285 (1974), the approved change was an increase in wages and benefits that was justified by the employer's need to confer such benefits to stay in business. *Id.* at 293. In the instant case, because an incumbent union remains the employees' bargaining representative unless and until the union is decertified, the Board distinguished "unilateral changes affecting the union's dealings with the employees whom it continues to represent from those relating to wages and benefits ...." The Board noted that even under *Vernon* and *Ellex,* an employer "is not licensed to interfere with the union's representative functions which continue during the pendency of the decertification petition." We agree with the Board that *Vernon* and *Ellex* are distinguishable on this basis, and do not support the Company's argument that its actions on December 11, 13, and 14 were proper or lawful.[8]

### B. The Company's Interrogation of Willie Jones.

The Company also contends that the Board erred in finding that Willie Jones' conversation with his supervisor, Elbert Hill, constituted coercive interrogation and created the impression that the Company was conducting surveillance over its employees' union activities and affiliation, thus violating section 8(a)(1) of the NLRA. The Company asserts that because the conversation was brief, isolated, and followed by a week Hill's assurances that Jones' union interests would not affect his job, the Board erred as a matter of law in concluding that section 8(a)(1) was violated.

Coercive interrogation of employees regarding union association or affiliation is prohibited by the NLRA. *See, e.g., NLRB v. Laredo Coca Cola Bottling Co.,* 613 F.2d 1338, 1342 (5th Cir.), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). Section 8(a)(1) is violated when all of the circumstances surrounding an interrogation reasonably permit the inference that the interrogation had the tendency to coerce employees. *See, e.g., NLRB v. Pope Maintenance Corp.,* 573 F.2d 898, 904 (5th Cir.1978); *NLRB v. Birdsall Construction Corp.,* 487 F.2d 288, 291 (5th Cir.1973). It is not necessary that the employee or employees are in fact coerced. *Pope Maintenance, supra,* at 904. Because the question whether coercive interrogation has occurred is one of fact, its primary determination rests with the Board, and we accord "great deference" to that body's findings. *NLRB v. Henriksen, Inc.,* 481 F.2d 1156, 1161 (5th Cir.1973); *see Laredo Coca Cola, supra,* 613 F.2d at 1341. Thus, if there is substantial evidence in the record taken as a whole for the Board's finding of a violation, we will not disturb that finding. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Laredo Coca Cola, supra,* 613 F.2d at 1341.

In the instant case, we think that the record as a whole amply supports the Board's finding that the Hill-Jones conversation constituted a violation of section 8(a)(1). Hill summoned Jones to his office and questioned Jones concerning his union

---

**8.** The Company also asserts that the Union had notice of the Company's intent to institute changes in access and failed to demand bargaining, thus waiving its rights. We find this argument meritless. The record supports the Board's finding that the Company's letter of November 20, *see supra* part I, merely elaborated on and "fleshed out" the terms of the collective bargaining agreement with regard to the access provision, and did not alter the terms of the agreement. The November 20 letter did not effect a change in the access provision nor did it provide warning of such a pending change. Similarly, Teague's conversation with a Company representative on November 12 constituted an attempt to vitalize and define the terms of

the agreement's access clause, not notice of the Company's subsequent unilateral alteration thereof. Thus, we agree with the Board's finding that the Union did not waive its right to object to the Company's conduct. *See, e.g., American Distributing Co. v. NLRB,* 715 F.2d 446, 450 (9th Cir.1983) ("To assert successfully a waiver-by-inaction defense, an employer must show that the union had clear notice of the employer's intent to institute the change sufficiently in advance of actual implementation so as to allow a reasonable opportunity to bargain about the change"); *cert. denied,* — U.S. —, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984); *see also NLRB v. Crystal Springs Shirt Corp.,* 637 F.2d 399, 402 (5th Cir.1981).

sentiments. Jones was alone; Hill was the Company representative responsible for the arrest of Vasquez and Teague several days before when they attempted to exercise the right of access that had been collectively bargained for. Jones had witnessed the arrest of Vasquez and Teague. The Board could also have properly inferred that because Jones denied his union membership upon Hill's inquiry, Jones indeed felt coerced. We think it is clear that in these circumstances, the Board's finding that section 8(a)(1) was violated is correct. *See, e.g., TRW–United Greenfield Division v. NLRB*, 637 F.2d 410, 416–17 (5th Cir.1981); *NLRB v. Aero Corp.*, 581 F.2d 511, 514 (5th Cir.1978); *Florida Steel Corp. v. NLRB*, 529 F.2d 1225, 1229 (5th Cir.1976). Moreover, upon Jones' denial of membership, Hill disclosed that he knew that Jones and two of Jones' co-workers were union members. This disclosure exacerbated the coercive effect of the interrogation and, as the Board found, constituted an independent violation of section 8(a)(1). *See, e.g., Hendrix Manufacturing Co. v. NLRB*, 321 F.2d 100, 105 n. 7 (5th Cir.1963) ("[W]hen an employer ... takes steps leading his employees to think [surveillance] is going on, they are under the threat of economic coercion, retaliation, etc.").

The Board's finding that the encounter between Hill and Jones was isolated does not render the interrogation lawful. As we have discussed, we look to the total circumstances surrounding an interrogation to assess its effect. *NLRB v. Birdsall Construction, supra.* Here, the interrogation followed the confrontation involving Vasquez and Teague and their subsequent arrest, and there was an implication that employee surveillance was being conduct-

ed. In these circumstances, we decline to disturb the Board's finding of coercive interrogation in violation of section 8(a)(1). Nor are we persuaded that Hill's prior statement to Jones that Hill was unconcerned about Jones' union affiliation had the ameliorative effect attributed to it by the Company. Jones' denial of union membership amply indicates that he did not credit Hill's reassurances and cuts against a finding that the reassurances mitigated the impact of the subsequent interrogation.

### C. The Effect of the Union's Merger with Local 988.

■ The Company maintains that the Union's merger with Local 988 subsequent to the Board order now sought to be enforced was effected by improper procedures. On the basis of these asserted improprieties the Company contends first that the Board erred by directing in the representation proceeding that a second decertification election be held with Local 988 appearing on the ballot as the Union's successor. The Company also asserts that some aspects of the Board's order in the unfair labor practice proceeding have become moot as a result of the merger.

We do not have jurisdiction to consider the Company's first contention because the NLRA provides only for judicial review of "final orders" of the Board in unfair labor practice cases. Though consolidated for hearing with an unfair labor practice proceeding, the Board's decision in the representation proceeding does not constitute a "final order."[9] *See AFL v. NLRB*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940); R. Gorman, *Basic Text on Labor Law* § 10

---

9. The Company cites *Local Union No. 4–14, Oil, Chemical & Atomic Workers International Union, AFL–CIO v. NLRB*, 721 F.2d 150, (5th Cir. 1983), as supporting our jurisdiction over the representation issue. In *Local Union No. 4–14*, we reviewed the Board's conduct and supervision of an election only after the employer had committed an unfair labor practice in treating as void the collective bargaining agreement in existence prior to the disputed affiliation election. In contrast, the Company in this case committed the unfair labor practices precipitat-

ing the present action before the merger of Locals 549 and 588. The policy and practice of the NLRA suggests that dilatory litigation by the employer facing a representation election should not be permitted to frustrate the employee's preferences for representation. In *Local Union No. 4–14*, the election over, a court could review whether the Board reasonably exercised its discretion. With an election ordered by the Board, an assertion of our jurisdiction in this matter would be improper at this time.

(1976). In *Hendrix Manufacturing Co. v. NLRB, supra,* at 106, we held:

> [E]ver since *American Federation of Labor v. NLRB,* 1940, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; *NLRB v. International Brotherhood of Electrical Workers,* 1940, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354, it has been clear that Courts of Appeals do not have the power to review representation proceedings. And jurisdiction does not come into being because the representation order arises out of a consolidated hearing as to which the Court of Appeals has jurisdiction to review the order concerning unfair labor practices.

*See also TRW–United Greenfield Division, supra,* at 415 n. 2; *Custom Recovery, Division of Keystone Resources, Inc. v. NLRB,* 597 F.2d 1041, 1046 (5th Cir. 1979).

The Company also contends that the merger of the Union with Local 988 effectively renders the Board's order moot because it is directed at the Company's conduct relative to Local 949, and Local 949 no longer exists.

 When the Board finds that unfair labor practices have been committed, it is entitled to have its order enforced by the courts to prevent a recurrence of that unlawful conduct in the future. In this manner, the Board and the courts vindicate the statutory right of employees to freely choose a bargaining representative, *see NLRB v. Raytheon Co.,* 398 U.S. 25, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970), and the public interest in preventing unfair labor practices. *See National Licorice Co. v. NLRB,* 309 U.S. 350, 364, 60 S.Ct. 569, 577, 84 L.Ed. 799 (1940). Doubt as to the existence of Local 949 and the validity of a successor's affiliation election should not be permitted to excuse the Company's *previous* unlawful conduct. *See NLRB v. Union Carbide Caribe, Inc.,* 423 F.2d 231, 235–36 (1st Cir.1970) (doubt as to identity or existence of union affords no basis for denying enforcement of Board's order to bargain).

In *NLRB v. Raytheon Co., supra,* the Supreme Court held that a subsequent election lost by the union did not moot the union's action to enforce a Board order requiring the employer to cease and desist from unlawful campaign tactics and to post an appropriate notice. Following *Raytheon,* the Fifth Circuit has held that an election result could not moot an enforcement proceeding against an employer who had committed unfair labor practices. *NLRB v. Mangurian's, Inc.,* 566 F.2d 463 (5th Cir.1978). *See also Chef's Pantry, Inc. v. NLRB,* 654 F.2d 458 (6th Cir.1981). "Despite intervening compliance, or ... union victory, future misconduct may occur, and enforcement is an essential predicate for a future contempt order." *NLRB v. Mangurian's Inc., supra,* at 468. Likewise, termination of Local 949's status as the authorized bargaining representative and doubt as to Local 988's status as successor cannot be permitted to pretermit enforcement of an order aimed at preventing future misconduct. *Cf. NLRB v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

We conclude that enforcement of the Board's order would best effectuate the statutory purpose of protecting the right of the Company's employees to freely choose a bargaining representative. Allegations of impossibility of compliance have not prevented courts from enforcing Board orders against employers who have discontinued their business operations. *See, e.g., Southpart Co. v. NLRB,* 315 U.S. 100, 104–07, 62 S.Ct. 452, 454–456, 86 L.Ed. 718 (1942); *NLRB v. West Coast Casket Co.,* 469 F.2d 871, 873 (9th Cir.1972); *NLRB v. Kostilnik,* 405 F.2d 733, 735 (3d Cir.1969). Thus, the public interest in prohibiting and discouraging the commission of unfair labor practices is no less critical in cases where union representation has ceased or changed, despite the Company's allegations that it has been ordered to "perform an impossible act."

Accordingly, pursuant to section 10(e) of the NLRA, enforcement of that part of the Board's order arising from the Company's

unfair labor practices is enforced as hereby modified.[10]

Paragraph 1(a) of the recommended order of the ALJ, adopted (with modifications) by the Board, is hereby modified by the insertion of the following language after the date November 30, 1979 and before the period: "(said Local 949 or its successor, including Local 988, Teamsters, should it be deemed the successor to Local 949 as a result of the pending representation proceeding, shall be referred to herein as the "Union")".

The Notice to Employees is modified by striking the fifth, sixth, seventh, eighth and ninth paragraphs and substituting the following paragraphs:

> WE WILL NOT deny access to our premises to agents of your certified collective bargaining representative, including agents of Local 988, Teamsters, should it be deemed the successor to the rights of Local 949 as a result of the pending representation proceeding, who seek admittance for the purpose of representing you so long as we are legally obligated to give effect to applicable collectively bargained provisions permitting access to our premises by the representative's officials.

> WE WILL NOT cause the arrest of any official of your certified collective bargaining representative who is on our premises pursuant to a collectively bargained access provision for the purpose of providing you with representation so long as the officials make arrangements with us to enter our property as provided by the applicable collectively bargained provision.

> WE WILL NOT unilaterally alter the terms under which officials of your certified representative may enter our premises to represent you from those which existed under any collective bargaining agreement without first providing the certified representative with an opportunity to bargain concerning such a change, and, if the certified representa-

tive chooses to bargain, we will maintain the existing provision in effect until an agreement is reached upon a change or until an impasse is reached in our bargaining over any proposed change.

> WE WILL NOT in any like or related manner interfere with, restrain, or coerce you if you choose to exercise the rights you have under the National Labor Relations Act, or refuse to bargain with your certified representative as required by the Act.

> WE WILL rescind the restrictions which we placed on the access by officials of your certified representative to our premises on December 13 and 14, 1979.

As modified, the Board's order will be enforced. *See NLRB v. Express Publishing Co.*, 312 U.S. 426, 439, 61 S.Ct. 693, 701, 85 L.Ed. 930 (1941); *NLRB v. Calumet Steel Division of Borg-Warner Corp.*, 121 F.2d 366, 371 (7th Cir.1941).

ENFORCED AS MODIFIED.

---

**10.** That part of the Board's order arising from the representation proceeding is exempted from

our enforcement because of our lack of jurisdiction. *See infra* text at note 9.